## FIRE INSURANCE ASSOCIATION (Limited) *v.* WICKHAM.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MICHIGAN.

No. 1032. Submitted November 12, 1888. — Decided November 26, 1888.

Each question certified in a certificate of division of opinion —
- (1) Must be a distinct point or proposition of law, clearly stated, so that it can be definitely answered, without regard to other issues of law in the case;
- (2) Must be a question of law only, and not a question of fact, or of mixed law and fact, and hence must not involve or imply a conclusion or judgment on the weight or effect of testimony or facts adduced in the cause; and,
- (3) Must not embrace the whole case, even when its decision turns upon matter of law only, and even though it be split up into the form of questions.

In a certificate of division of opinion the question whether parol evidence may or may not be introduced to explain such documents as those which were given in evidence by the defendant at the trial of this cause, and which are set forth in the statement of facts below, is a question of pure law, presenting but a single point for consideration, and the fact that many writings, all of the same general character, were offered to prove the same fact, does not make the case to differ.

MOTION TO DISMISS. The court stated the case as follows:

This case comes here by writ of error and a certificate of division of opinion of the judges of the Circuit Court. The action was brought upon a policy of insurance against fire to recover damages occasioned by the burning of the propeller St. Paul, of which the plaintiffs below, the defendants in error,

were the owners. The vessel was insured against fire in ten companies, including the plaintiff in error, which issued two policies amounting together to $5000. The St. Paul first took fire at Detour, where the River St. Mary enters Lake Huron, and had to be scuttled and sunk. She was then raised, and taken to Detroit for repairs. There she took fire a second time, and had to be again sunk. The mere injury to the vessel was settled and paid for by the insurers before it was due by the terms of the policies. The plaintiff contends that the expense of raising and saving the vessel was not included in this settlement, but was left for future adjustment, and this suit was brought to recover that part of the loss. Similar suits were brought against the other companies, all of which were, by agreement, to abide the event of this. The defendants in error had a verdict and recovered judgment for $2297.65, which would not have been sufficient to give this court jurisdiction but for the difference of opinion between the judges. That difference arose on the trial as will appear by the following statement of the case:

It appeared in evidence that the first fire, at Detour, occurred on the 10th of November, 1883, and the second, at Detroit, on the 24th of the same month whilst the cargo was being unladen in order to make the necessary repairs. In both cases the vessel was sunk for the purpose of saving her and her cargo, and raised again at considerable expense. On the 15th of December, 1883, a written agreement was entered into between the plaintiffs and the adjusting agents of the several insurance companies for the purpose of adjusting the amount of loss caused by the fires to the hull, tackle, awnings, apparel, furniture, engine and boiler connections and appurtenances thereto belonging; by which agreement certain arbitrators were appointed to make such adjustment without reference to any other question or matter of difference within the terms and condition of the insurance, and of binding effect only as far as regards the actual cash value of, or damage to, such property covered by the policies. The adjustment under this agreement was completed December 26, 1883, showing a loss of $15,364.78, the proportion due by the plaintiffs in error

being $1920.60. The adjusting agent sent proofs of the loss to the companies with the following letter to each, viz.:

"Buffalo, *January* 12*th*, 1884.

"Gentlemen: I enclose herewith proofs, Jno. W. Wickham, Jr., managing owner, for loss and damage prop. St. Paul, which I trust will be found satisfactory:

The claim as made covers only the loss and dam-
age by fire and water, as per agreement, on the
tackle, awnings, apparel, furniture, &c., of . . $1,735 08
And the appraisers' award on hull, engines, mach'y,
&c., of . . . . . . . . . . . . . . . . 13,629 70

"Aggregating in all . . . . . . . . . . $15,364 78

"The assured will make further claims for expenses of rais-ing the propeller, and is now preparing the statement of such expenses to submit with his subsequent claim.

"Yours truly, W. D. Allen, *Adjuster*."

At the trial it was admitted that the cost of raising and saving the vessel was upwards of $15,000. The plaintiffs ad-mitted that they had been paid the cost of repairing the ves-sel as set forth in the proofs of loss prepared and forwarded to the companies as aforesaid, but claimed that they had not been paid any part of the cost of raising and saving the vessel; that before the commencement of this suit they demanded pay-ment thereof, which was refused, the insurers denying liability therefor, and the same remains unpaid.

The defendants claimed that the payment of the cost of said repairs was made by way of accord and satisfaction of the plaintiffs' entire claim, and offered in evidence the follow-ing receipts:

"$1344.42. January 19, 1884.

"Received from the Fire Insurance Association of London, England, thirteen hundred and forty-four $\frac{42}{100}$ dollars, it being in full of all claims and demands for loss or damage by fire which occurred on the 10th and 24th days of November, 1883,

to property insured by policy No. 180,617, Buffalo, New York, agency; and in consideration of said payment said policy is hereby cancelled and surrendered to said company, and all further claims by virtue of said policy forever waived.

    " (Signed)          JOHN W. WICKHAM, JR.,
                            *Managing Owner.*
            W. B. COMSTOCK,
              *per* WICKHAM."

There was also a receipt indorsed upon the policy No. 180,617, as follows:

                               " JANUARY 19TH, 1884.

" In consideration of four $\frac{47}{100}$ dollars, return premium, the receipt of which is hereby acknowledged, this policy is cancelled and surrendered to the Fire Insurance Association (Limited) of England.

    " (Signed)          JOHN W. WICKHAM, JR.,
                            *Managing Owner.*
            W. B. COMSTOCK,
              *per* WICKHAM, JR."

A similar receipt for $576.18 was given by the plaintiffs to the defendant for the amount due on the other policy issued by the latter. And like receipts, all of the same date except two, which were a few days later, were given to the other companies concerned, all of which were given in evidence by the defendants.

The defendant also gave in evidence the following paper signed by the plaintiffs, marked Exhibit QQ, viz.:

                       "NEW YORK, *January* 19th, 1884.

" This is to certify that the loss and damage by fire which occurred on the 23d day of November, 1883, to the steamer St. Paul, is this day adjusted for the sum of fifteen thousand three hundred and sixty-four and $\frac{78}{100}$ dollars ($15,364.78) payable without discount upon presentation of the policies to the several companies interested by the assured, and apportioned among the several companies as follows, viz.:

| | Insures. | Pays. | |
|---|---|---|---|
| " Continental, of New York..... | $7,500 00 | $2,880 90 | |
| "London & Liverpool & Globe... | 6,000 00 | 2,304 70 | — Paid. |
| "Fire Insurance Association.... | 3,500 00 | 1,344 42 | — Paid. |
| Queen's, of England... ...... | 7,000 00 | 2,688 84 | — Paid. |
| Fire Ins. Ass'n, 2d policy...... | 1,500 00 | 576 18 | — Paid. |
| Security of New Haven....,... | 2,500 00 | 960 30 | — Will remit. |
| Exchange, of New York...... | 2,500 00 | 960 30 | — Paid 1, 19, '84. |
| Mechanics', of New York..... | 2,500 00 | 960 30 | — Paid 1, 19, '84. |
| German, of Pa................ | 2,500 00 | 960 30 | — Will remit. |
| Prescott Insurance Co........ | 2,500 00 | 960 30 | — Remitted. |
| Greenwich, of New York...... | 2,000 00 | 768 24 | — Paid 1, 19,'84. |
| | $40,000 00 | $15,364 78 | |

"(Signed)        JOHN W. WICKHAM, JR.,

*Managing Owner.*

W. B. COMSTOCK,

"JOHN K. OAKLEY,       *per* JOHN W. WICKHAM, JR.

J. H. WELLMAN,

*Committee.*"

The court held that if these documents were sufficient evidence of an intent to compromise and settle the expense of raising and saving the propeller, although the amount paid was only that of the injury to the property, yet the anticipation of such payment nearly sixty days before, according to the terms of the policies, it was due, was a sufficient consideration for such compromise.

The defendant having rested, the plaintiffs, in rebuttal, offered evidence tending to show that in January, 1884, the said Wickham went to New York; and that on the 19th of that month, the day on which the receipts given by him to the insurance companies, and the paper marked QQ were dated and signed, and before they were signed, he, the said Wickham, had an interview with Oakley and Wellman, the committee of the insurance companies who signed the last-named paper, and also evidence of certain communications between said committee and Wickham in that interview, which showed, or tended to show, that the said receipts and said paper QQ were not intended to refer to or embrace the claim

of the plaintiffs for raising and saving said vessel, but only the claim for the damages specially included in the adjustment made by the arbitrators before mentioned.

The defendants objected to the introduction of this parol testimony tending to contradict the receipts and drafts given in evidence and the certificate of January 19th, Exhibit QQ, upon the ground that such evidence was not admissible in the absence of fraud, misrepresentation and mistake. These objections were overruled by the presiding judge, and the evidence was received and submitted to the jury. This is one of the points on which the judges differed in opinion. They state the question as follows : " On the facts stated in the foregoing record, was the parol testimony offered in evidence by the plaintiffs admissible to vary and contradict the certificate of January 19th, 1884, Exhibit QQ, and the receipts and drafts hereinbefore set forth ? "

The evidence offered by the plaintiffs having been given to the jury, the defendants offered evidence tending to contradict the same, and to show that the whole matter arising out of the loss was intended to be compromised and settled, by what took place between the parties on the 19th of January, 1884.

There was no evidence that said agreement of January 19th, Exhibit QQ, and the several receipts and discharges executed by the plaintiffs, were obtained by any fraud or misrepresentation of the defendants or their agents.

After the evidence was closed the defendant requested the court to charge the jury that the defendant was entitled to a verdict. On this point the judges who tried the cause were also divided in opinion, the presiding judge being of opinion that the request should not be granted; and this is the second question certified to this court for its decision.

The defendant in error now moves to dismiss the writ of error, mainly on the ground that the questions certified are not distinct points of law which can be properly certified to this court upon a difference of opinion between the judges of the Circuit Court.

*Mr. F. H. Canfield* and *Mr. H. H. Swan* for the motion.

The first question certified does not present a point of law which gives this court jurisdiction. The question is expressly qualified by and wholly dependent for answer " on the facts stated in the foregoing record." There are no facts found upon which the question can be answered. The statement referred to is a mere narration of conflicting evidence. See *Jewell* v. *Knight*, 123 U. S. 426, 434; *Ogilvie* v. *Knox Insurance Co.*, 18 How. 577; *Waterville* v. *Van Slyke*, 116 U. S. 699, 704; *Enfield* v. *Jordan*, 119 U. S. 680; *Dennistoun* v. *Stewart*, 18 How. 565; *Wilson* v. *Barnum*, 8 How. 257; *Webster* v. *Cooper*, 10 How. 54.

It is submitted that the first question certified is obnoxious to each one of these rulings: because (*a*) it explicitly and in terms asks, not a question of law upon *ascertained* facts, but one which can only be answered by reference to conflicting evidence, and which is dependent on the issues of fact in the case; (*b*) it is not a question which this court is able to decide without assuming or finding matters of fact which are for the jury; (*c*) it admits of different answers, as the evidence of the plaintiff or defendant is taken as the basis of the question; (*d*) it is wholly dependent upon the character and intended function of the papers referred to in the question, which was a matter for the jury under the charge of the court.

In reply to this, it may be urged that the purpose of the question is to elicit the opinion of this court on the legal effect and operation of the papers mentioned; *i.e.*, whether they are contracts within the meaning of the rule excluding parol testimony to vary or contradict them. To this there are several obvious rejoinders: (1) The certificate does not ask that question. (2) If it did, it would present the whole case to this court. (3) To assume that the papers, Exhibit QQ, and the drafts and receipts constitute the contract of accord and satisfaction pleaded, is to beg the very question of fact in issue between the parties.

The mere fact of payment of the fire loss before due is in law no consideration for the discharge of the salvage claim, for " nothing is consideration that is not regarded as such by both parties." To regard it as such " would be to make a

contract for the parties to which their minds never assented." An unknown or accidental consideration is not sufficient. *Philpot* v. *Gruninger*, 14 Wall. 570; *Ellis* v. *Clark*, 110 Mass. 389, 392. And so the district judge charged the jury, in substance.

The primary question is purely one of fact. The dependent and secondary question as to the medium of proof is inseparable from the inquiry into the fact, and is not a pure question of law. "The rule which excludes parol testimony to contradict or vary a written instrument has reference to the language used by the parties. That cannot be qualified or varied from its natural import, but must speak for itself. The rule does not forbid an inquiry into the object of the parties in executing and receiving the instrument." *Brick* v. *Brick*, 98 U. S. 514. It only applies when the parties to an agreement reduce it to writing, and agree or intend that that writing shall be their agreement. *Harris* v. *Rickett*, 4 H. & N. 46. See also *Mobile & Montgomery Railroad* v. *Jurey*, 111 U. S. 584; *Wake* v. *Harrop*, 6 H. & N. 768; *Pym* v. *Campbell*, 6 El. & Bl. 370; *Davis* v. *Jones*, 17 C. B. 625; *Guardhouse* v. *Blackburn*, L. R. 1 P. & D. 109, 115.

While these rulings expressly decide the question of evidence which would seem to belong rather to the argument upon the merits, the equally patent corollary from them is that in the conflict of evidence as to the existence of and consideration for the alleged agreement, the question first certified neither did nor could "occur on the trial" as a pure point of law within the meaning of the law, even if it were not qualified and limited to the admissibility of the evidence, "on the facts stated in the foregoing record."

Again, if as has been urged, the papers mentioned in the question are inoperative against the claim for raising and saving the vessel, because of want of sufficient consideration, the inquiry is pertinent whether there is any actual conflict between the papers thus limited and the parol testimony.

There is nothing on the face of Exhibit QQ, and the drafts and receipts, excepting the general words of release of claims under the policies to indicate that the words "the loss

and damage by fire" were used in any larger sense in them than in Exhibit A. The amount of the expressed consideration is persuasive to the same construction. If that phrase has the same meaning in all the papers, or if there is doubt as to its interpretation, the oral testimony was competent to apply the writing to their subject-matter, and there was no conflict. *Bradley* v. *Washington &c. Packet Co.*, 13 Pet. 89; *United States* v. *Peck*, 102 U. S. 64; *Barreda* v. *Silsbee*, 21 How. 146; *United States* v. *City Bank*, 19 How. 385; and the question became one for the jury under the charge of the court — a mixed question of law and fact.

*Mr. C. I. Walker* and *Mr. F. A. Baker* opposing.

MR. JUSTICE BRADLEY, after stating the case as above reported, delivered the opinion of the court.

This subject has been so often and so recently discussed by this court, that it is hardly necessary to do more than to state the conclusion that must be drawn from the case as presented. The law is so clearly stated, and the cases are so fully cited by Mr. Justice Gray in the recent case of *Jewell* v. *Knight*, 123 U. S. 426, 432, that nothing further need be said. It is there laid down, first that the question certified "must be a distinct point or proposition of law, clearly stated, so that it can be definitely answered, without regard to other issues of law or fact in the case;" secondly, it must be a "question of law only, and not a question of fact, or of mixed law and fact;" hence it must not involve or imply a conclusion or judgment upon the weight or effect of testimony or facts adduced in the cause — as, for example, a question of fraud, which is necessarily compounded of fact and of law; thirdly, it must not embrace "the whole case, even when its decision turns upon matter of law only;" and even though it be split up into the form of questions. These propositions are illustrated by examples, which need not be repeated here. Applying them to the case in hand, we can have but little difficulty in disposing of the present motion. The second question certified is clearly ob-

noxious to the second and third rules; it asks us to decide whether, upon all the evidence in the case, the defendant was entitled to a verdict. This would require us to decide upon the weight of the evidence and the conclusions to be drawn from the facts. It would also require us to decide the whole case.

The first question is not open to these objections. It presents a single point of law, namely, whether parol evidence may or may not be introduced to explain such documents as those which were given in evidence by the defendant. We are not now asked to decide whether such evidence should have been allowed in this case. That will be the question for consideration when the case is argued on its merits. On the present motion we are only required to decide whether the question is one of pure law, and one that presents but a single point for consideration. We think it is of that character. If only a single writing had been offered in evidence by the defendant, the question whether parol evidence could have been given to alter or explain it would clearly have been a single question of law. The fact that many writings were offered, all of the same general character, and offered to prove the same fact, does not make the case to differ.

*The motion to dismiss the writ must be denied.*