## FIRE INSURANCE ASSOCIATION, LIMITED *v.* WICKHAM.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MICHIGAN.

No. 59. Argued October 28, 1891. — Decided November 16, 1891.

Parol testimony is admissible to show the circumstances under which a written instrument was executed, or that it was, in fact, without consideration.

Where the facts clearly show that a certain sum is due from one person to another, a release of the entire sum upon payment of part is without

consideration, and the creditor may still sue for and recover the residue: but, if there be a *bona fide* dispute as to the amount due, that dispute may be the subject of a compromise.

When a claim not yet due is prepaid in part by the debtor, such prepayment may operate as a discharge of the whole claim if both parties intended it to be a consideration for such discharge; and whether both parties so intended is a question for the jury.

Circumstances attending the execution of a receipt in full of all demands, may be given in evidence to show that by mistake it was made to express more than was intended, and that the creditor had, in fact, claims that were not included.

The plaintiff took out fire insurance policies upon a vessel in 10 companies to the amount of $40,000 in all. The vessel took fire, and, in order to save it, it was scuttled and sunk, and the fire thus extinguished. It was then raised, taken to port, and repaired. The loss by fire, exclusive of the expense of raising the vessel, etc., was $15,364.78. The owner made claim upon the insurers for this amount for "loss and damage by fire and water as per agreement," stating that he would make further claims " for expenses of raising the propeller," and was " preparing the statement of such expenses to submit with his subsequent claim." The companies declined to pay such subsequent claim, but paid in advance the amount of the loss by fire so stated, taking receipts, expressed to be in full of all claims for loss or damage by fire, and in which it was further stated that the policies were cancelled and surrendered. The parties further signed a paper in which " the loss and damage by fire " was certified at that aggregate amount, " payable without discount upon presentation," and the amount was apportioned among the several companies. In an action brought by the owner to recover from the companies the amount of the claim for raising and saving the vessel, some $15,000, it was *Held,*

(1) That parol evidence was admissible to explain the receipts, and to show that they were not intended to cover the claim for raising, etc.;

(2) That the paper so signed by the parties was not in the nature of a contract on the part of the owner.

THE court stated the case as follows:

This case was brought before the court upon a certificate of division of opinion between the circuit and the district judges. The action was begun in November, 1884, upon two policies of fire insurance written by the Fire Insurance Association, defendant, upon the propeller St. Paul, of which defendants in error were owners, one of such policies being for $3500, and the other for $1500. On the same day actions

were begun against six other insurance companies upon their policies on the same vessel, and an order was subsequently made that all the actions so commenced should abide the event and final determination of the one which the plaintiffs should elect to try. The following facts appeared upon the trial: In 1883, the plaintiffs, who were the owners of the propeller St. Paul, engaged in navigating the great lakes, obtained upon her fire insurance policies in ten companies, to the amount of $40,000. Plaintiffs also had $45,000 of insurance by marine policies on the same vessel at the same time. In all of these policies save one, it was provided that in case of loss by fire, the loss should be payable in sixty days after proofs of loss had been filed with the company. On November 10, 1883, while on a voyage from the lower lakes to Lake Superior, a fire broke out in the hold of the vessel, and to save her and her cargo she was scuttled and sunk, and the fire thus extinguished. She was subsequently raised and brought to Detroit for repairs, where she arrived on the 19th of November, and immediately began to discharge her cargo. A few days thereafter, and while her cargo was being unloaded, another fire broke out in her hold, and she was again sunk for the purpose of saving her, and was afterwards raised at considerable expense. On the 15th of December, a written agreement was entered into between the plaintiffs and the adjusting agents of the several insurance companies for the purpose of appraising the amount of loss caused by these fires, with a stipulation that the agreement should be "of binding effect only as far as regards the actual cash value of or damage to such property covered by policies of said companies issued at their various agencies." It was further added that "the property on which loss or damage is to be estimated and appraised is the hull of the propeller St. Paul, including the tackle, awnings, furniture, engine and boiler connections and appurtenances thereto belonging," with a further memorandum, following the signature of Wickham, but preceding those of the insurance companies, that "this agreement does not apply to or cover any question that may arise for saving boat and cargo." The adjustment under this agreement of the

direct loss by fire was completed December 26, and formal proofs of loss were also sent to the several insurance companies in New York, and were received in due course of mail. The amount of the loss according to the report of the appraisers, exclusive of the expense of raising and saving the vessel and cargo thus adjusted, aggregated $15,364.78, and the amount proportioned to the plaintiffs in error was $1920.60. The adjusting agent in sending proof of loss to the companies accompanied the same with the following letter to each of such companies:

"Buffalo, January 12, 1884.

"Gentlemen: I enclose herewith proofs, John W. Wickham, Jr., managing owner, for loss and damage prop. St. Paul, which I trust will be found satisfactory:

"The claim as made covers only the loss and
damage by fire and water, as per agreement,
on the tackle, awnings, apparel, furniture,
etc., of ................................ $1,735 08
And the appraisers' award on hull, engines,
mach'y, etc., of ......................... 13,629 70
                                           ‾‾‾‾‾‾‾‾‾
Aggregating in all ................. $15,364 78

"The assured will make further claims for expenses of raising the propeller, and is now preparing the statement of such expenses to submit with his subsequent claim.

"Yours truly,

"W. D. ALLEN, *Adjuster.*"

At the trial, it was admitted that the cost of raising and saving the vessel was also upwards of $15,000. The plaintiffs admitted that they had been paid the cost of repairing the vessel, as set forth in the proofs of loss prepared and forwarded to the companies, but claimed that they had not been paid any part of the cost of raising and saving the vessel; that before the commencement of this suit they demanded payment thereof, which was refused, the insurers denying liability therefor; and that the same remained unpaid.

The defendants claimed that the payment of the cost of repairs was made by way of accord and satisfaction of the plaintiffs' entire claim, and offered in evidence the following receipts :

" $1344.42 . January 19, 1884.

" Received from the Fire Insurance Association of London, England, thirteen hundred and forty-four $\frac{42}{100}$ dollars, it being in full of all claims and demands for loss or damage by fire which occurred on the 10th and 24th days of November, 1883, to property insured by policy No. 180,617, Buffalo, New York, agency, and in consideration of said payment said policy is hereby cancelled and surrendered to said company, and all further claims by virtue of said policy forever waived.

" (Signed)     JOHN W. WICKHAM, Jr.,

" *Managing Owner.*

" W. B. COMSTOCK,

" per WICKHAM, Jr."

There was also a receipt endorsed upon the policy No. 180,617 as follows:

" January 19, 1884.

" In consideration of four $\frac{47}{100}$ dollars return premium, the receipt of which is hereby acknowledged, this policy is cancelled and surrendered to the Fire Insurance Association (Limited) of England.

" (Signed) .    JOHN W. WICKHAM, Jr.,

" *Managing Owner.*

" W. B. COMSTOCK,

" per WICKHAM, Jr."

A similar receipt for $576.18 was given by the plaintiffs to the defendant, in form precisely like the first (except as to the number of the policy and the amount), on account of the second policy issued by the association. Similar receipts, all of the same date, except two, which were a few days later, were given to the other companies concerned, all of which

were put in evidence by the defendant. The receipt to the Mechanics' Fire Insurance Company was expressed to be " in full satisfaction of all claims and demands upon said company for loss and damage by fire," etc., . . and " in consideration thereof said company is hereby discharged forever from all further claims by reason of said fire, loss and damage, and said policy of insurance is hereby assigned, with all claim thereunder, to said company, and said policy is hereby cancelled in full and surrendered to said company." The receipt to the London, Liverpool and Globe Insurance Company was for a sight draft, " which, when paid, will be in full compromise and payment of all claims and demands upon said company for loss and damage by fire," etc. The receipts to the other companies did not differ materially from those given to the defendant company.

The defendant also put in evidence the following paper signed by the plaintiffs, marked Exhibit QQ:

" New York, January 19, 1884.

" This is to certify that the loss and damage by fire which occurred on the 23d day of November, 1883, to the steamer St. Paul, is this day adjusted for the sum of fifteen thousand three hundred and sixty-four and $\frac{78}{100}$ dollars ($15,364.78), payable without discount upon presentation of the policies to the several companies interested by the assured, and apportioned among the several companies as follows, viz.:

|  | Insures | Pays |
|---|---|---|
| Continental, of New York. | $7,500 00 | $2,880 90 |
| London & Liverpool & Globe | 6,000 00 | 2,304 70—Paid. |
| Fire Insurance Association | 3,500 00 | 1,344 42—Paid. |
| Queen's, of England | 7,000 00 | 2,668 84—Paid. |
| Fire Ins. Ass'n, 2d policy | 1,500 00 | 576 18—Paid. |
| Security, of New Haven | 2,500 00 | 960 30—Will remit. |
| Exchange, of New York | 2,500 00 | 960 30—Paid 1, 19, '84 |
| Mechanics', of New York | 2,500 00 | 960 30—Paid 1, 19, '84 |
| German, of Pa. | 2,500 00 | 960 30—Will remit. |

Prescott Insurance Co. . . 2,500 00     960 30—Remitted.
Greenwich, of New York. 2,000 00     768 24—Paid 1, 19, '84
                                    —————————————
                              $40,000 00 $15,364 78

                    "(Signed)         John W. Wickham, Jr.,
                                            "*Managing Owner.*
                              "W. B. Comstock,
                         "per John W. Wickham, Jr.
"John K. Oakley,
"J. H. Wellman,
       "*Committee.*"

The defendant having rested, the plaintiffs, in rebuttal, offered evidence tending to show that in January, 1884, Wickham went to New York; and that on the 18th of January, a meeting of the companies interested in the loss was held at the board rooms in New York, at which meeting Messrs. Wellman and Oakley were appointed a committee to confer with the plaintiffs in regard to such loss. Of this meeting Wickham had no notice and was not present. That on the following day Wickham met Wellman and Oakley, and was notified by them that they were appointed as such committee, and that the companies were ready and willing to pay the expenses of making the repairs occasioned by the fire, as set forth in proofs of loss hereinbefore mentioned.

That Wickham called attention to the claim for raising and saving the vessel, stating that he expected to get a contribution to such expense from the owners of the cargo of the vessel upon a general average, and for the sake of settlement offered to share the balance of such expense with the fire insurers in the proportion that the uninsured interest in the steamer bore to the amount insured; that the committee replied that the companies were not liable for such expense, and that they had no authority whatever to consider the claim for raising and saving the steamer, and thereupon gave to Wickham the following paper, marked Exhibit PP, stating to him that the same was a record of the proceedings of the meeting at which they were appointed such committee, and that their

authority was limited by the terms of the resolution adopted at such meeting and set forth in said exhibit and that they could not go beyond it or consider this claim for raising and saving the vessel even if they were disposed to do so.

The paper referred to is as follows:

"Exhibit PP.

"Board Rooms, January 18, 1884.

"Meeting of the companies interested in loss of propeller St. Paul.

Present:

| | |
|---|---|
| Continental............................ | $7,500 00 |
| Fire Insurance Association............. | 5,000 00 |
| Queen's............................... | 7,000 00 |
| Exchange.............................. | 2,500 00 |
| Mechanics', New York................. | 2,500 00 |
| Greenwich............................ | 2,000 00 |
| | $26,500 00 |

"Organized by Mr. Wellman, chairman.

"Communication from John M. Murray, adjuster, at Detroit, in relation to expenses incurred in saving propeller St. Paul.

"On motion, duly seconded —

"That the request of the assured to help him out is not granted, but the companies are recommended to pay the amount of claim as set forth in the proofs of loss. Carried.

"Meeting adjourned.

"(Signed) G. W. Montgomery.

"On motion, the action of the meeting be referred to a committee of two for the purpose of conference with the owner. Carried.

"Chair appointed Mr. Oakley and Mr. Wellman."

A part of this paper was in the handwriting of Wellman.

Plaintiff offered evidence tending to show that the committee further stated that the companies were satisfied with the adjustment and proofs of loss, and were ready and willing to pay the cost of making the repairs to the steamer, necessitated directly

by the fire, without discount, and would waive any rights they might have under the policies making the loss payable in sixty days from the time the proofs were furnished. The plaintiffs were never requested to compromise or release their claim for the expense of raising and saving the vessel, nor was the release or compromise of such claim spoken of except by Wickham when he offered to settle, as hereinbefore stated, which offer was declined by the committee, as above stated, upon the ground that they had no authority to consider the matter.

Plaintiffs also offered evidence to show that, at such interview, Mr. Oakley, in behalf of the Mechanics' Insurance Company, gave to Wickham a check for the amount of the loss adjusted as aforesaid against the company, being $960.30, and Wickham then signed the aforesaid receipt for that amount to the company; and after the receipts were signed and delivered, the paper, Exhibit QQ, was prepared under the direction of Oakley and given to Wickham to exhibit to the representatives of other companies, to show the amount of the adjusted loss which had been apportioned against the companies respectively.

The defendant objected to the introduction of this parol testimony as tending to contradict the receipts and drafts given in evidence and the certificate of January 19th, Exhibit QQ, showing the apportionment of the loss to be paid by the several companies, upon the ground that such evidence was not admissible in the absence of fraud, misrepresentation and mistake. These objections were overruled by the presiding judge, and the evidence was received and submitted to the jury.

Upon the question of the admissibility of this testimony, however, there was a difference of opinion between the Circuit and the District Judges; and the following question was certified for the opinion of this court: " On the facts stated in the foregoing record, was the parol testimony offered in evidence by the plaintiffs admissible to vary and contradict the certificate of January 19th, Exhibit QQ, and the receipts and drafts hereinbefore set forth ? "

This testimony having been introduced, the defendant offered evidence tending to contradict the same, and to show that the

whole matter arising out of the loss was intended to be com-
promised and settled by what took place between the parties
at the meeting in New York. There was no evidence that the
agreement, Exhibit QQ, or the receipts and discharges executed
by the plaintiffs, were obtained by any fraud or misrepresent-
ation of the defendants or their agents. The amount thus
paid to the plaintiffs upon the settlement in New York was
the exact amount claimed in the proofs of loss, but it was
paid about fifty-five days before the same was due and pay-
able, as by the terms of all the policies, save one, the amount
of the loss was not payable until sixty days after the proofs
of the loss were furnished to the insurance companies, and
this was not earlier than January 14. In the charge to the
jury, the court instructed them that this payment before the
amount became due was a good consideration for the settle-
ment and discharge of the whole claim, if such settlement
were actually made, and if it were so understood and agreed
by the parties. The defendant claimed that the certificate
and apportionment of January 19, together with the receipts
and drafts, as a matter of law, showed a full settlement of the
entire claim, and an accord and satisfaction thereof. The
plaintiffs claimed that the settlement related solely to the loss
covered by the proofs of loss, and was not intended to, and did
not, embrace the claim for raising the vessel and cargo, and
saving the same. The question what the parties intended by
said settlement was submitted to the jury under the charge of
the court, and upon such parol testimony and papers a verdict
was rendered for the plaintiffs for the sum of $2297.65, and
a judgment for this amount was accordingly entered. A sec-
ond question was certified, as to whether the defendant was
entitled to a verdict under the facts in said record therein set
forth; but upon a motion to dismiss, this court held the ques-
tion to have been improper. 128 U. S. 426.

*Mr. C. I. Walker* for plaintiff in error.

There was a good consideration for these receipts; contracts
of cancelment and discharge and accord and satisfaction.
Assuming that the insurance companies were liable for all the

losses occasioned by fire, such losses were not payable until sixty days after the filing of proofs of loss in the offices of the several companies. These proofs were forwarded from Buffalo on Saturday, January 12, 1884, and could not have been received at the offices in New York before Monday, January 14. Most of the payments were made on the 19th of January, five days after such proofs of loss were filed, and fifty-five days before any payments became due thereon. The last payments were made January 31, nineteen days after the filing of such notice, and forty-one days before the payments became due. The payment of the money in advance of its being due was a good consideration for the discharge of the entire claim; although the payments were for a much less sum than was actually due. *Pinnel's Case,* 5 Rep. 117; *Brooks* v. *White,* 2 Met. 283; *S. C.* 37 Am. Dec. 95; *Smith* v. *Brown,* 3 Hawks, 580; *Boyd* v. *Moats,* 75 Iowa, 151.

The plaintiffs, for the purpose of varying and contradicting the papers thus given in evidence by the defendants, introduced parol testimony, all of which was objected to by the defendants in the absence of fraud, misrepresentation and mistake.

There is really no conflict of authorities upon the general rule as to the introduction of parol testimony to affect written contracts. The doctrine, as very clearly stated by Judge Story, is as follows: "Parol evidence is not admissible to contradict, qualify, extend or vary written instruments, and the interpretation of them must depend upon their own terms." 2 Story's Eq. § 1531.

Nowhere has this doctrine been more clearly recognized than in the decisions of this court. In an early case, Chief Justice Marshall said: "It is a general rule, that an agreement in writing or an instrument carrying an agreement into execution, shall not be varied by parol testimony, stating conversations or circumstances anterior to a written instrument." *Hunt* v. *Rousmanier,* 8 Wheat. 174. See also *Bank of the United States* v. *Dunn,* 6 Pet. 51, 56; *Brown* v. *Wiley,* 20 How. 442, 447; *United States* v. *Childs,* 12 Wall. 232, 244, 245; *Specht* v. *Howard,* 16 Wall. 564; *Burnes* v. *Scott,* 117 U. S. 582; *Boffinger* v. *Tuyes,* 120 U. S. 198, 205.

The cases are very numerous in the state courts where the same doctrine has been clearly stated and enforced. *Corse* v. *Peck,* 102 N. Y. 513; *Brewster* v. *Potruff,* 55 Michigan, 129; *Highstone* v. *Burdette,* 61 Michigan, 54.

Of course there are exceptions to and qualifications of this rule. Thus, as stated by Judge Story and Chief Justice Marshall, that in cases of fraud, misrepresentation or duress, this may be shown by parol testimony for the purpose of showing the contract to be void and of no effect. So, if a written contract has been executed and delivered, but with a clear and distinct understanding that it was not to have effect until a certain condition had been performed or until a certain event had happened, this may be shown by parol. *Ware* v. *Allen,* 128 U. S. 596; *Reynolds* v. *Robinson,* 110 N. Y. 654. These cases are upon the clear and sensible doctrine that no contract was ever actually made, or had taken effect.

Another clearly recognized exception is, that oral testimony is admissible to contradict or vary the terms of simple receipts for money, and this upon the ground that they are informal, and are not in the nature of contracts, and, as said by Parsons, they are hardly "an instrument at all," and have little more force than an oral admission of the party receiving. 2 Parsons on Contracts, 555; 2 Whart. Ev. 920, 1064; Greenleaf's Ev. § 305.

If a receipt is connected with a contract, the receipt may be varied or contradicted by parol, but not the contract. The authorities upon this subject are very clear.

In the argument in the court below, the counsel for the plaintiffs insisted, that by the decisions of the State of New York, a contract or receipt like the one in question can be contradicted in all its parts. We have examined the New York cases cited, and we submit that a careful examination will show that they are in harmony with our position in this case, and we call attention to them. See *Egleston* v. *Knickerbacker,* 6 Barb. 458, 466; *Coon* v. *Knap,* 4 Selden, 402; *S. C.* 59 Am. Dec. 502; *Creery* v. *Holly,* 14 Wend. 26; *Kellogg* v. *Richards,* 14 Wend. 116; *Ryan* v. *Ward,* 48 N. Y. 204; *Smith* v. *Holland,* 61 N. Y. 635; *De Lavallette* v. *Wendt,* 75 N. Y. 579.

None of the later cases in other States are inconsistent with the earlier New York cases. *Tisloe* v. *Graeter*, 1 Blackford, 363; *Dale* v. *Evans*, 14 Indiana, 288; *Alcorn* v. *Morgan*, 77 Indiana, 184; *Fay* v. *Gray*, 124 Mass. 500; *Goss* v. *Ellison*, 136 Mass. 503; *Brown* v. *Cambridge*, 3 Allen, 474; *Kansas City & Olathe Railway* v. *Hicks*, 30 Kansas, 288.

There are many cases that hold, where a contract and a receipt are combined in the same written instrument, that while the simple receipt may be varied by parol testimony, the contract connected therewith cannot thus be affected. *Lowe* v. *Young*, 59 Iowa, 364; *Hewett* v. *Chicago, Burlington &c. Railway*, 63 Iowa, 611; *Bemis* v. *Becker*, 1 Kansas, 226, 240; *Edgerly* v. *Emerson*, 3 Foster (23 N. H.) 555, 564; *S. C.* 55 Am. Dec. 207. So in relation to bills of lading and warehouse receipts. *Graves* v. *Harwood*, 9 Barb. 477, 481; *O'Brien* v. *Gilchrist*, 34 Maine, 554; *S. C.* 56 Am. Dec. 676; *Stewart* v. *Phœnix Ins. Co.*, 9 Lea, 104; *Smith* v. *Brown*, 3 Hawks, 580.

*Mr. F. H. Canfield* and *Mr. Joseph H. Choate* for defendants in error.

MR. JUSTICE BROWN delivered the opinion of the court.

As we held in this case on the motion to dismiss, (*Fire Insurance Association* v. *Wickham*, 128 U. S. 426,) that the second question was improperly certified and could not be answered, the only question now presented for decision is the first, namely : " On the facts stated in the foregoing record, was the parol testimony offered in evidence by the plaintiffs admissible to vary and contradict the certificate of January 19, Exhibit QQ, and the receipts and drafts hereinbefore set forth ? "

We have no disposition to overrule or qualify in any way the general and familiar doctrine enforced by this court in repeated decisions, from the case of *Hunt* v. *Rousmanier*, 8 Wheat. 174, decided in 1823, to that of *Seitz* v. *Brewers' Refrigerating Company*, *ante*, 510, decided at the present term, that parol testimony is not admissible to vary, contradict, add

to or qualify the terms of a written instrument. The rule, however, is subject to numerous qualifications, as well established as the general principle itself, among which are that such testimony is admissible to show the circumstances under which the instrument was executed, or that it was in fact without consideration.

It was not seriously contended in this case that the defendant was not· legally liable upon its policies for the expenses, clearly incidental to the fire, of raising· and saving the vessel, as well as for the direct injury to the vessel in consequence of the fire, and if the plaintiffs were induced to settle their claims for one-half the amount that was due them, and there was no consideration for the relinquishment of the other half, this suit will lie for the recovery of the amount. The rule is well established that where the facts show clearly a certain sum to be due from one person to another, a release of the entire sum upon payment of a part is without consideration, and the creditor may still sue and recover the residue. If there be a *bona fide* dispute as to the amount due, such dispute may be the subject of a compromise and payment of a certain sum as a satisfaction of the entire claim, but where the larger sum is admitted to be due, or the circumstances of the case show that there was no good reason to doubt that it was due, the release of the whole upon payment of part will not be considered as a compromise, but will be treated as without consideration and void. As was said by Chief Justice Waite in *United States* v. *Bostwick*, 94 U. S. 53, 67: "Payment by a debtor of a part of his debt is not a satisfaction of the whole, except it be made and accepted upon some ·new consideration:" although it was subsequently held in *Baird* v. *United States*, 96 U. S. 430, 431, that if the debt be unliquidated and the amount uncertain, this rule does not apply. "In such cases the question is, whether the payment was in fact made and accepted in satisfaction." The authorities upon this point are numerous and decisive. *Pinnel's Case*, 5 Rep. 117; *Fitch* v. *Sutton*, 5 East, 230; *Harriman* v. *Harriman*, 12 Gray, 341, 343; *Redfield* v. *Holland Ins. Co.*, 56 N. Y. 354; *Ryan* v. *Ward*, 48 N. Y. 204; *American Bridge Co.* v. *Murphy*, 13 Kansas, 35; *White* v. *Jor-*

*dan*, 27 Maine, 370; *Bailey* v. *Day*, 26 Maine, 88; *Weber* v. *Couch*, 134 Mass. 26; *Foakes* v. *Beer*, 9 App. Cas. 605.

In this case there were two distinct and separate claims of similar amount, namely, $15,364.78, one of which was for the direct loss and damage to the property insured by the fire, and the other was for the incidental cost of raising the propeller and her cargo. The plaintiffs assumed, upon the face of the receipts, to settle with the defendant for both of these claims by the payment of the exact amount of one of them. In other words, they assumed to settle for a moiety of their entire claim — a claim the legality and justness of which was so far beyond dispute that it could hardly fail to be recognized by the agents of the insurance companies who were present at the meeting in New York. That they intended and supposed they were making a settlement of the plaintiffs' entire claim against them is probably true. But, aside from the parol testimony given by Wickham of the conversation at the meeting, the admissibility of which is the question in dispute, there was some evidence tending to show that the plaintiff Wickham may have supposed that he was settling only for the direct loss by the fire in the agreement for the survey or appraisement of the damages signed by both parties, which provided that it should not "apply to or cover any question that may arise for saving boat and cargo." There were also other circumstances tending to show that the agents of the companies might have known that Wickham supposed he was settling only for the direct loss. First, in the letter of Allen, the adjuster, who, in transmitting proofs of loss to the various companies, stated that "the assured will make further claims for expenses of raising the propeller, and is now preparing the statement of such expenses to submit with his subsequent claim." And secondly, in the memorandum of the meeting of the companies, January 18, Exhibit PP, in which, after reading a communication from an adjuster at Detroit in relation to the salvage expenses, a motion was carried "that the request of the assured to help him out is not granted, but the companies are recommended to pay the amount of claim as set forth in the proofs of loss." These items of testimony are in-

consistent with the idea that the agents of the companies did not know of the further claim, and are also pertinent upon the question whether Wickham understood that he was settling that claim.

(1) But assuming that the receipts upon their face show a complete settlement of the entire claim for one-half the total amount, what was the consideration for the release of the other half? The only one that is put forward for that purpose is that payment was made five days after proofs of loss were furnished, or fifty-five days before anything was actually due by the terms of the policy. That prepayment of part of a claim may be a good consideration for the release of the residue is not disputed; but it is subject to the qualification that nothing can be treated as a consideration that is not intended as such by the parties. Thus in *Philpot* v. *Gruninger*, 14 Wall. 570, 577, it is stated that "nothing is consideration that is not regarded as such by both parties." To constitute a valid agreement there must be a meeting of minds upon every feature and element of such agreement, of which the consideration is one. The mere presence of some incident to a contract which might under certain circumstances be upheld as a consideration for a promise, does not necessarily make it the consideration for the promise in that contract. To give it that effect it must have been offered by one party and accepted by the other as one element of the contract. In *Kilpatrick* v. *Muirhead*, 16 Penn. St. 117, 126, it was said that "consideration, like every other part of a contract, must be the result of agreement. The parties must understand and be influenced to the particular action by something of value or convenience and inconvenience recognized by all of them as the moving cause. That which is a mere fortuitous, result flowing accidentally from an arrangement, but in no degree prompting the actors to it, is not to be esteemed a legal consideration." See also 1 Addison on Contracts, 15; *Ellis* v. *Clark*, 110 Mass. 389. Now evidence of what took place at the meeting, if admissible for no other purpose, was competent as bearing upon the question whether the prepayment was mentioned or treated as an inducement or consideration for the release of the residue of the claim. It certainly

was not so stated in the defendant's plea, which set forth that the defendant "paid to said plaintiffs a valuable consideration, to wit, the sum of $1920.60, in full accord and satisfaction, etc., . . . for losses and damages by fire, at the several times in said plaintiffs' declaration set forth, . . . which valuable consideration or sum of money, so paid as aforesaid, was then and there accepted and received by said plaintiffs of and from said defendant in full payment, satisfaction, release and discharge of the said two policies of insurance, . . . and in consideration of said money so paid and received as aforesaid said plaintiffs then and there released in writing the said defendant," etc. There is no mention here of the prepayment of this sum as a consideration for the release of the residue. The oral testimony upon this point was conflicting; the plaintiffs swearing that the committee stated that the companies were ready and willing to pay the cost of making repairs, and would waive any right they might have under the clause making the loss payable in sixty days from the time the proofs were furnished. There is no doubt that this right to delay payment was a stipulation which the insurer could waive at his option, *Insurance Company* v. *Norton*, 96 U. S. 234, 240, and if, as the plaintiffs stated, the insurance companies did exercise this option, and agree to waive their right to the sixty days, the prepayment cannot be regarded as a consideration to support the alleged compromise. It is a familiar doctrine that parol evidence is competent to show a want of consideration. 1 Greenl. Ev. secs. 284, 304.

The court charged the jury upon this point that the payment of the policy fifty-five days in advance of the time when the same would become due, without discount for interest, was, by itself, a sufficient consideration for waiving the plaintiffs' further claim in the policies, if it was understood as such.

The question was a proper one for the jury to pass upon, the charge was sufficiently favorable to the defendant, and their conclusion, whether correct or not, cannot be the subject of review here.

(2) Aside from this, however, the circumstances attending the execution of a receipt in full of all demands may be given

in evidence to show that by mistake it was made to express more than intended, and that the credito·· had in fact claims that were not included.   Thus in *Simons* v. *Johnson*, 3 B. & Ad. 175, which was an action of covenant, defendant pleaded a release, which recited that various disputes were existing between the parties, and that actions had been brought against each other which were still pending, but that it had been agreed between them, that, in order to put an end thereto, the defendant should pay the plaintiff £150, and that each should release the other from all actions, causes of action and claims brought by him, or which he had against the other, and the instrument then proceeded to release " all claims, demands, actions whatsoever."   It was held that parol evidence was admissible to show that the claim upon the covenant was not intended to be included in the release, Littledale, J., saying: " There can be no doubt that the matter contemplated in this release was the actions there referred to, and parol evidence was admissible to show that the subject matter of the present action was not involved in them."   Other cases to the same effect are : *Lawrence* v. *Schuylkill Navigation Co.*, 4 Wash. C. C. 562; *Payler* v. *Homersham*, 4 M. & S. 423; *Jackson* v. *Stackhouse*, 1 Cowen, 122; *Grumley* v. *Webb*, 44 Missouri, 444; *Price* v. *Treat*, 29 Nebraska, 536; *St. Louis, Wichita &c. Railroad* v. *Davis*, 35 Kansas, 464.

The appraisement, the letter of Allen transmitting the proofs of loss and the memorandum of the meeting of the underwriters' agents are all corroborative of the testimony of the plaintiffs that the committee replied to Wickham, when he asked them for a contribution for the expenses of raising and saving the vessel, that the companies were not liable for such expenses, and that they had no authority whatever for considering the claim for raising and saving the steamer.   If this be true, it requires no argument to show that the claim for salvage service was not intended to be included in the receipts.

There is no doubt that when a receipt also embodies a contract the rule applicable to contracts obtains, and parol evidence is inadmissible to vary or contradict it.   But the only

clause in these receipts which can possibly be claimed to partake of the nature of a contract is that providing for a cancellation and surrender of the policy. There was a similar provision endorsed on the policies. These, however, were inserted in pursuance of a clause in the policy to the effect that the insurance might be terminated at any time, at the option of the company, upon giving notice to the insured; and that in such case he should be entitled to claim a ratable proportion of the premium for the unexpired term for which the policy was to run. The court instructed the jury correctly upon this point, that if they found that the policies were surrendered in consideration of the unearned premiums stated in the receipts, endorsed on the policies, the surrender was no defence; and while it had a tendency to show the plaintiffs' relinquishment of all their rights under the policy, it was not conclusive, if the jury found that it was made in consideration of the unearned premiums.

There was nothing in the nature of a contract on plaintiffs' part in the certificate of settlement, Exhibit QQ; it was a mere admission that the loss and damage by fire had been adjusted at a certain sum, and should be construed in connection with the submission of December 15, which showed that it did not apply to any question that might arise for saving boat and cargo.

The question certified should, therefore, be answered in the affirmative, and as this was the opinion of the presiding judge, and the case was submitted to the jury upon that theory, the judgment of the court below will be

*Affirmed.*

Mr. Justice Bradley and Mr. Justice Gray did not hear the argument nor take part in the decision of this case.