## OWENSBORO DITCHER & GRADER CO. v. MARKHAM.

Circuit Court of Appeals, Sixth Circuit.
May 11, 1929.

No. 5136.

W. P. Sandidge, of Owensboro, Ky. (Sandidge & Sandidge, of Owensboro, Ky., on the brief), for appellant.

E. B. Anderson, of Owensboro, Ky. (Harold Taylor, of Indianapolis, Ind., on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge. This was an action by a patentee, Markham, for an accounting by the appellant, defendant below, under a contract granting a license to manufacture and sell certain patented clamps. Only two contentions worthy of consideration are urged. The first raises a question of accord and satisfaction; the second, one of construction of section 15 of the contract.

1. The agreement provided for a minimum royalty of $2,500 for the first year, of which sum $1,351.33 was paid during the year. In making settlement for the balance defendant deducted certain losses aggregating $841.53, arising from alleged defects in design and the rejection of a quantity of the clamps as at first manufactured, and remitted the net balance of $307.14. The letter of transmittal stated the fact of the deduction and the belief that the defendant was entitled to an allowance therefor, but the enclosed check was not expressly tendered as in full settlement and satisfaction of royalties for the then past year. Within the next two or three days plaintiff replied emphatically denying the right of the licensee to charge the royalty account with these losses, but the check was retained and cashed by him. It is now claimed that this constituted an election by plaintiff to accept the check in full satisfaction of an implied condition to that effect. Cf. Baird v. U. S., 96 U. S. 430, 432, 24 L. Ed. 703.

It may well be doubted whether the court would be justified in implying a condition that the payment was tendered as in settlement of the whole claim for royalties where the payor expresses merely a somewhat tentative belief that he is entitled to make such deduction and that the payee will agree with such position when the full details are furnished; but conceding this, we are still of the opinion that no accord and satisfaction resulted.

Where the larger indebtedness is unliquidated or the subject of bona fide dispute, the payment of a less sum, made and accepted in settlement of the whole, may operate as a discharge of the entire claim. "But where the larger sum is admitted to be due, or the circumstances of the case show that there was no good reason to doubt that it was due, the release of the whole upon payment of part will not be considered as a compromise, but will be treated as without consideration and void." Fire Ins. Ass'n v. Wickham, 141 U. S. 564, 577, 12 S. Ct. 84, 87, 35 L. Ed. 860; Chicago, M. & St. P. R. Co. v. Clark, 178 U. S. 353, 365, 20 S. Ct. 924, 44 L. Ed. 1099; Alliance Ins. Co. v. Alper-Salvage Co., 19 F.(2d) 828, 832 (C. C. A. 6); Topas v. John MacGregor Grant, Inc., 18 F. (2d) 724 (C. C. A. 2), 52 A. L. R. 807; Keene v. Gauen, 22 F.(2d) 723, 724 (C. C. A. 5); Whittaker Chain Thread Co. v. Standard Auto Supply Co., 216 Mass. 204, 103 N. E. 695, 51 L. R. A. (N. S.) 315, Ann. Cas. 1915A, 949; Cf. Swindell v. Youngstown Sheet & Tube Co., 230 F. 438–442 (C. C. A. 6).

In the present case the claim of plaintiff against defendant was wholly liquidated. No slightest part was in dispute, but the defendant presented cross-demands founded not upon the contract which gave rise to plaintiff's claim but upon collateral losses and defendant's belief that plaintiff should fairly bear a portion of that burden. So presented to and disclaimed by the plaintiff there could neither be an implied condition that payment was tendered only in settlement of plaintiff's claim nor, if so, a consideration for the release of the unpaid balance which would bar inquiry here. Upon such inquiry the right of defendant to the deductions made is without merit.

2. The contract granted to defendant the right and option of cancellation at the end of any year upon 30 days' notice. After entering upon performance, defendant had made substantial expenditures in the purchase of patterns, dies, tools, jigs, etc., for manufacture of the patented device. Prior to the expiration of the second year the required notice of cancellation was given, and the question is now raised whether, under the terms of section 15 of the contract, plain-

tiff was obligated to take and pay for such equipment, or whether this course was optional.

Section 15 provides that in the event of cancellation, "then the grantor shall have the right to immediately take over all patterns, dies, tools, jigs, half-tones and electrotypes, then on hand and used in connection with the manufacture of said devices, and pay for same at the appraised value determined as above provided, and the grantor shall be bound to take over said articles and pay for same at such appraised price within ninety (90) days after any such cancellation of the contract. If he should not take them over and make such payment within said 90 days, then the grantee' may at its option sell said articles to any other party."

In construing this contract the court is limited to a determination of the intention of the parties from the language which they have used, but the contract must be so interpreted as a whole, giving effect to all portions thereof and so reconciling apparently conflicting provisions, if possible, as to give to it that sequence and coherence which the parties may be presumed to have intended. Cf. Corbett v. Winston Elkhorn Coal Co., 296 F. 577 (C. C. A. 6); Canadian Nat. R. Co. v. Jones Co., 27 F.(2d) 240 (C. C. A. 6).

The provisions of section 15, above quoted, are inartistically expressed, and it is difficult to understand why the draftsman used the expressions "grantor shall be bound to take over said articles," and "if he should not take them over * * * then the grantee may at its option sell said articles to any other party," if it were intended to give to the grantor merely an option to purchase. On the other hand, it is equally difficult to understand the choice of the phrase "grantor shall have the right to immediately take over" or the absence of any provision for deficiency payment in the event that grantor failed to purchase and the articles had to be sold elsewhere, if it was not intended to grant an option only. Thus, in determining the true meaning to be given to, or the intent expressed by, this language, the other provisions of the contract are of material assistance.

At the time of the contract the plaintiff owned certain equipment for manufacture which, under section 7, defendant was given an option to purchase at appraised prices. But there was clearly no obligation to so purchase. As to equipment so purchased the defendant bound itself by section 10 to make "surrender" at the price paid therefor. The use of this word tends also to indicate a right or option in the plaintiff but not an obligation. Section 16 commences with the word "also," and provides that in case of cancellation the plaintiff shall have the right to take over at appraised prices any manufactured devices or material which the defendant may have on hand; but if the plaintiff does not exercise such an option, the defendant shall have the right to continue the manufacture and sell said devices until all devices and material on hand at the time of cancellation shall be used up and disposed of. There is no suggestion here of obligation upon the part of plaintiff, and the diction used seems to indicate a similarity of intended provision for the devices themselves, material purchased for manufacture, and the manufacturing equipment.

The situation of the parties likewise throws light upon their probable intention. The defendant was in the manufacturing business. The plaintiff was an inventor without capital. The defendant exercised its own discretion as to the amount and character of the equipment to be purchased. The contract gave plaintiff no voice in such purchase. It was anticipated that the contract would continue during the life of the patents and would be mutually profitable. The plaintiff was granting a license, not entering upon a joint manufacturing venture. If the contract remained in effect but one or two years it is at least exceedingly doubtful whether, in contemplation of the parties, plaintiff could have been expected to have funds wherewith to purchase all equipment that the defendant might have seen fit to buy. Lacking such funds, could the parties have anticipated or intended an obligation to purchase on the part of plaintiff? Such obligation to purchase manufacturing equipment would seem to be inconsistent with the continuance of a right in the defendant to continue the manufacture of raw material in the event plaintiff refused to purchase such material, which purchase was clearly optional. It is the more natural conclusion that the parties intended plaintiff to have merely an option which would enable him to make other connections and take over the manufacture of his patented devices as a whole, the devices themselves, the raw material from which they were made, and the tools and equipment for manufacture.

Nor is the language of section 15 irreconcilably inconsistent with the grant of an option and the absence of obligation. It is not improbable that the granting of an option was alone intended, but an option with a fixed period of limitation within which it

must be exercised if at all. If not exercised within the period thus fixed the defendant was at liberty to treat the equipment as its own, just as by section 16 it was free to continue manufacture and sale of the devices if such devices and the material were not purchased by plaintiff. If so treated as its own, defendant might sell such equipment to any other purchaser without liability for possible claim of contributory infringement and without necessity of account for any surplus thus secured over the appraised prices. There is nothing to suggest that such appraised prices would not truly represent value upon the open market. Such construction tends to harmonize the provisions of sections 10 and 16 with the provisions of section 15 and to give reasonable sequence and coherence to the contract as a whole. We are of the opinion that the court did not err in construing section 15 as imposing no obligation to purchase upon the plaintiff, but as simply granting to plaintiff an option to so purchase, which option must have been exercised within 90 days from the cancellation date, if at all.

A number of other rulings of the court in the accounting, refusing to allow defendant credit for various minor items in almost trivial amounts, are also assigned as error. Each of these has been examined with reference to the evidence, and the court finds none of the contentions based thereon has merit. The judgment of the court below is accordingly affirmed, with costs.