Uott, J.,
delivered tbe opinion of tbe court:
Tbis is a case of sale by sample. Tbe question whether tbe goods equalled tbe sample was to be determined by inspection.
The contract assured to tbe defendants certain rights. 1. Tbe Commissioner of Indian Affairs was to select and appoint these inspectors. 2. If tbe goods did not pass inspection, tbe Commissioner might reject them. 3. If the contractor failed to deliver goods “ when called upon to do so,” tbe Commissioner might purchase in open market. 4. If goods submitted for inspection should be rejected, the Commissioner might require tbe contractor “within five days after such rejection” to deliver “proper goods or supplies in tbe place of those rejected;” and in case of bis failing to do so “ within tbe said period of five days, then” tbe Commissioner might purchase “such goods or sujiplies as may be required to supply the deficiency.” 5. “If tbe quality” of the goods offered should be “inferior to the standard of tbe sample upon which tbe contract was awarded and the necessities of the service he stick as to compel” the Commissioner to accept tbe goods offered, “then the same may be received subject to tbe inspection and test of a competent inspector ” “to determine tbe percentage of value less than tbe sample,” and a “ deduction twice greater than tbe difference in value” between the goods furnished and tbe price agreed upon should be made.
Tbe contractor was only assured of two rights, viz: That be should receive a stipulated price for tbe goods furnished, and that in tbe case of a failure of tbe goods tendered to pass inspection be might supply other goods “in tbe place of those rejected,” with a reservation in favor of the ^defendants that they might require that tbis be done “within five days after such rejection.”
It seems manifest that there are some things for which tbe claimant should recover.
1. Fifty-four bales of blankets were rejected for not passing tbe inspection of a majority of tbe inspectors and a portion of them by all of tbe inspectors. The Commissioner of Indian Affairs, without requiring tbe contractor to deliver “within five days after such rejection proper goods in tbe place of those rejected,” and without notice of any kind, purchased goods in the open market and charged tbe difference in price, $2,100.95, to tbe contractor. Tbe reason of tbe Commissioner for so doing *428 was tbafc the claimant had failed to deliver the goods within the time provided in the contract, and the Commissioner had notified him that u complete deliveries must be made by October 1st, or piurchases will be made in open market at yonr expense.’’
It is manifest that the Commissioner confounded the provision in the contract which authorized him to bay in the market, if the contractor should fail to deliver within the prescribed time, with the provision which authorized him to require ■the contractor to furnish proper goods within five days in the place of goods which should not pass inspection. The two, however, were distinct. If the contractor failed to deliver, the Commissioner was authorized to buy in the market without notice. But if the Commissioner waived that right and allowed the contractor to proceed, and inspected the goods which he tendered, the contractor was entitled to a reasonable time to supply others, unless the Commissioner gave notice that he must do so within five days. No such notice was given. The first provision was in the nature of a- forfeiture clause, and if waived could not be reasserted. For the excess of price paid and charged to the contractor he should recover.
2. One hundred and seventy-six bales of blankets were rated by the inspectors as inferior to the sample, but fit for the service. Their inferiority was rated by the inspectors at per cent inferior to the sample.” The Commissioner retained them at a deduction from the contract price of 10£ pier cent, amount-in g to $3,036.10. This was done without notice to the contractor and without affording him an opportunity to supply the proper goods. The contract gave to the defendants no such arbitrary right; that is to say, the right of accepting goods and reducing the contract price at their option. This power could be exercised only if “ the necessities of the service he such as to compel the party of the first part, or his agents, to accept the article or articles offered.” No such necessity is shown or alleged, and it is manifest that no such necessity existed. A period of much more than five days elapsed between the rejection of the inspectors and the action of the Department. During that interval the contractor might have furnished proper goods. The action of the Department was based exclusively upon the report of the Board of Indian Commissioners sitting in the city of New York. There is not a suggestion in the report *429 that the necessities of the service were such as to compel them, to accept these blankets.
3. In the course of inspection blankets of the value of $1,189.74 at contract rates were torn and destroyed by the inspectors.' The tearing and destruction seem to have been indiscriminate. Blankets from bales that were rejected were torn and destroyed; blankets from bales that were accepted were torn and destroyed; and finally the sample blanket itself was torn and destroyed, and by the same methods that were applied to the others. The contract prescribed no form or method of inspection, and contained no provision relating to the destruction of goods by the defendants’ agents, the inspectors; and there is no evidence in the case to show that in the ordinary transactions of men buying and selling blankets, by sample such destruction and waste is regarded as inevitable to a proper test. The Commissioner of Indian Affairs directed that the blankets destroyed from the accepted bales should be a loss borne by the defendants, but this apparently was not done. That 2 per cent of the goods tendered should be destroyed by the purchaser in comparing them with the sample is a result which no court should uphold in the absence of provisions in the contract authorizing such a proceeding, or the clearest evidence of such a custom in the trade.
On the trial the claimant attacked the inspection, endeavoring to maintaiu that the inspectors acted in bad faith and with intent to injure him. That position is not sustained by the evidence. The claimant can not, therefore, recover for the profits which he might have made if he had been allowed to furnish the rejected goods. The defendants had a right to reject goods which did not pass inspection; they had nota, right to buy goods in the open market and charge the contractor with the difference in price without giving him an opportunity to supply the deficiency.
The judgment of the court is that the claimant recover of the defendants the sum of $6,326.79.