Peele, J.,
delivered tbe opinion of tbe court:
Tbe question submitted for our decision arises on tbe defendant’s demurrer to tbe petition, i. e., that tbe “petition does not allege facts sufficient to constitute a cause of action.” .
On May 23,1894, tbe claimant entered into a contract witb tbe defendants, through tbe Commissioner of Indian Affairs, to furnish for tbe use of tbe Indian Service during tbe fiscal year ending June 30,1895,2,049,000 pounds of flour, according to sample No. 2, to be delivered when required by the' defendants at Eusbville, Nebr., Casper, Wyo., etc., at and for tbe price of $1.41 and $1.48 per 100 pounds, respectively. That part of the contract material to tbe question presented is as follows:
“Article 5. That it is agreed by and between tbe parties hereto that in case of any failure of tbe party of tbe second part to deliver tbe articles named in tbe annexed schedule when called upon to do so, tbe party of the first part, or bis authorized agent or agents, shall have tbe right to purchase or cause to be purchased the same in open market, or otherwise, and to charge tbe difference in price or prices, if any, to tbe party of the second part; and it is also agreed that all goods or supplies offered for acceptance under this agreement shall be inspected by tbe samples thereof submitted witb tbe *548 proposals, by persons properly designated for that purpose by the party of the first jiart, and at such places as he may designate; and if, on such inspection, any of the said goods or supplies shall fail to conform to or equal said samples, the same shall be rejected, and the party of the first part shall have authority to require of the said party of the second part the delivery, within five days after such rejection, of proper goods or supplies in the place of those rejected. In case said party of the second part shall fail to deliver such proper goods or supplies within the said period of five days, then the said party of the first part shall have the right to purchase, or cause to be purchased, in open market, or otherwise, such goods or supplies as may be required to supply the deficiency. And the party of the second part, and his sureties, shall be held accountable, under the bond which may be given for the faithful performance of this agreement, for any excess in the cost of goods or supplies so purchased over and above the cost of the same at the price or prices designated in the schedule hereunto annexed: Provided, That in the case of any article to be furnished under this contract, if the quality of that offered shall be inferior to the standard of the sample upon which the contract was awarded, and the necessities of the service be such as to compel the party of the first part, or his agents, to accept the article or articles offered, then the same may be received subject to the inspection and test of a competent inspector, to be designated by the party of the first part, to determine the percentage of value less than the sample aforesaid, and upon whose findings payment shall be made at a percentage of deduction twice greater than the difference in value between tbe articles so furnished and the price herein agreed to be paid.”
It is averred in the petition as follows:
“ That under and in pursuance of the requirements of said contract he furnished and delivered at Casper, Wyo., on or about September 4th, 1894, one hundred and seventy-four thousand pounds (174,000 lbs.) of flour, which was then and there inspected, in accordance with the said contract, by one M. H. V an Pelt, 1 inspector of supplies,’ who made and signed his certificate in two parts, original and duplicate, that the said flour is ‘good merchantable flour, and of quality fully equal to the sample on which Mr. James B. Finney’s contract, dated May 23d, 1894, was awarded;’ whereupon the said flour was taken and received by proper officers of the United States and was hauled from Casper to the Shoshone Indian Agency, a distance of about 175 miles, ivliere it was again inspected by one Ferdinand Bohrecht, ‘ inspector of supplies,’ who also made and signed a certificate, dated Shoshone Agency, on or about September 17th, 1894, to the same effect and in the same manner as the certificate aforesaid of M. H. Van Pelt; whereupon *549 Capt. P. H. Bay, U. S. A., acting Indian agent for tbe Shoshone Indian Agency, Wyoming, issued bis receipt for said flour in two parts, original and duplicate, dated on or about October 4tb, 1894, wherein be certifies that tbe flour bas been tborougbly inspected and ‘found to be fully equal to tbe requirements of tbe contract and sample agreed upon.’
‘‘Your petitioner further states that under and in pursuance of said contract be furnished and delivered, on or about September 1st, 1894, at Bushville, Nebraska, one hundred thousand (100,000) pounds of flour, which was then and there inspected by one Lieut. Edward E. Hartwick, U. S. A.,!inspector of supplies,’ who made and signed bis certificate in two parts, original and duplicate, that said flour was ‘according to contract and of quality fully equal to sample on which Mr. James B. Finney’s contract, dated May 23, 1894, was awarded;’ whereupon the said flour was taken and received on the part of tbe United States and hauled from Bushville, Nebr., to tbe Pine Bidge Indian Agency, South Dakota, a distance of about 25 miles, where it was receipted for by Capt. Charles G-. Penney, U. S. A., acting Indian agent for that agency, on or about September 3rd, 1894, who issued his receipt therefor in two parts, original and duplicate, certifying therein that said flour had been thoroughly inspected and ‘found fully equal to the requirements of the contract and sample agreed upon.’
“Your petitioner further represents that the originals of said certificates and receipts were turned over to him as evidence that each of said lots of flour had been furnished and delivered to the United States in accordance with the terms, conditions, and requirements of said contract; that he forwarded said certificates and receipts to the Commissioner of Indian Affairs as the basis and evidence of his claims for paymentin accordance with said contract for said flour; that for tiie 174,000 pounds of flour furnished and delivered at Casper, Wyo., for the Shoshone Indian Agency, his claim at contract price, $1.48 per 100 lbs., amounted to $2,575.20, which amount was reduced by withholding credit for $522, for the following reasons alleged in the ‘ statement of differences,’ furnished to your petitioner by the Auditor of the Treasury for the Interior Department, dated on or about November 26,1894:
The United States inspector of flour at Chicago, Illinois, reports that inspection of a sample of the flour delivered at Shoshone Agency by claimant shows it to he inferior in color and strength to the sample upon which the contract was awarded, and the difference in value 15 cents per 100 lbs. Therefore, under the provisions of article 5 of contract, credit is withheld for 30 cents per 100 lbs. on the 174,000 lbs. delivered, or. $522.00
“ This action as above is final so far as this office is concerned. By the provisions of section 8 of the act approved July 31,1894, any person whose accounts may have been settled by the Auditor may, within a year, obtain a revision of said account *550 by tbe Comptroller of tbe Treasury, whose decision upon such revision shall be final upon tbe executive branch of tbe Government.
“The said claim as thus stated by tbe Auditor of tbe Treasury for tbe Interior Department was paid by Treasury draft for $2,053.20, which draft was mailed to and received and , appropriated by your petitioner, without' knowledge that, by such appropriation of said draft, be would be shut out from an appeal of said claim to the Comptroller of tbe Treasury for tbe allowance of tbe amount of $522, for which credit was withheld from your petitioner in the settlement made by the Auditor aforesaid.
“ Tour petitioner further states that for the 100,000 pounds of flour furnished aud delivered as aforesaid at Bushville, Nebr., his claim, at the contract price, $1.41 per 100 pounds, amounted to $1,410, which was stated, allowed, and paid in full by Treasury draft mailed to your petitioner. But your petitioner states that his claim, amounting to $5,640, for a subsequent lot of flour furnished and delivered by him, under and in pursuance of said contract, at Bushville, Nebr., was reduced by withholding credit from yonr petitioner for $300, for the following-reasons alleged in the ‘ statement of differences,’ furnished to your petitioner by the Auditor of the Treasury for the Interior Department, dated on or about July 11, 1894 (5):
“‘The United States inspector of flour at Chicago reports, that the sample of flour furnished him from the delivery of the 100,000 pounds on September 1,1894, was inferior to the sample upon which the contract was awarded, and that the percentage of inferiority is 15 cents per 100 pounds; therefore, under the provisions of article 5 of said contract, a deduction is made of 30 cents per 100 pounds on the 100,000 pounds.’
“The remainder of said ‘statement of differences’ as to the action therein set out being final, so far as the said Auditor is concerned and as to the claimant’s right of appeal, are the same as in the other ‘statement of differences’ hereinbefore recited.
“Tour petitioner received and appropriated the Treasury draft issued and mailed to him in payment of said claim, with the deduction made therefrom as thus stated, without knowledge that he would by such appropriation be shut out from an appeal of said claim to the Comptroller of the Treasury. All of the foregoing allegations will more certainly and definitely appear in the original papers and records in the matter in the proper departments of the United States Government.
“ Tour petitioner further states that, of the alleged inspections of said flour delivered as aforesaid, by ‘the United States inspector of flour at Chicago,’ and his reports thereon, he has no knowledge except as stated in the papters aforesaid; that prior to any such inspections of said flour and reports thereof, if made as stated, the said flour had been duly inspected as pro *551 vicled for in and contemplated by said contract, and tbe said flour had been accepted and received by the proper officers of the United States as filling all the requirements of the said contract; that your petitioner was therefore entitled to payment for said flour in full at the prices stipulated therefor in said contract; and that the withholding- of credit from your petitioner for the sums of $522 and $300, as aforesaid, was without warrant of authority therefor in said contract, is an injustice to your petitioner, subjecting him to loss and damage to the total amount of $822.
“ Your petitioner further states that he has been informed by his attorney that by appropriating the Treasury drafts issued to him as aforesaid he is cut off from appeal of said claims to the Comptroller of the Treasury by reason of the following provision contained in section 8 of the legislative, executive, and judicial appropriation act of July 31,1894, which act, in so far as it provides for a reorganization of the accounting offices of the Treasury, became effective October 1,1894:
“ ‘Any person accepting payment under a settlement by an Auditor shall be thereby precluded from obtaining a revision of such settlement as to any items upon which payment is accepted.’
. “And that in consequence of said provision of the law the claims of your petitioner, as aforesaid, can only be reached by a suit in the Court of Claims or in a district court of the United States, under the provisions of the act.of March 31, 1887, entitled ‘An act to provide for the bringing of suits against the Government of the United States.’ ” (24 Stat. L., 505.)
As was said in the Dobson Case (31 C. Cls. R., 422, 427), where a like contract was under discussion, “this is a case of sale by sample. The question whether the goods equaled the sample was to be determined by inspection,” and in this respect it appears from the petition that, “in pursuance of the requirements of said contract,” the claimant furnished and delivered to the defendants at .the several places stated the two lots of flour, each of which was inspected in accordance with the contract, the inspecting officer giving duplicate certificates certifying that the flour so inspected was “good merchantable flour and of quality fully equal to the sample” on which the claimant’s contract was awarded.
The flour after being so inspected was hauled to the several agencies stated, the first lot being again subjected to inspection, with the same result as before. -That both lots of flour were delivered to the respective officers of the United States Army acting as Indian agents at the several agencies as averred, *552 who accepted tlie same and gave their respective receipts therefor, in which they each certified that the flour so received had been thoroughly inspected and “found fully equal to the requirements of the contract and sample agreed upon.”
It will be observed that the flour offered for acceptance was inspected by the sample, as disclosed by the certificates and receipts, and “found fully equal to the requirements of the contract and sample agreed upon.”
Thus far the contract appears by the averments in the petition to have been complied with, and the flour so furnished, inspected, and received thereby passed beyond the control of the claimant, and he became entitled to the contract price therefor.
Thereafter, however, the claimant having transmitted to the Commissioner of Indian Affairs the original certificates and receipts so given as the basis of the amount due him under the contract, as he avers, he was advised by the Auditor of the Treasury for the Interior Department, under date of November 26, 1894, that his claim for the 174,000 pounds of flour delivered at the Shoshone Agency, amounting, at the price stated, to $2,575.20, had been reduced by withholding credit for 30 cents per 100 pounds, amounting to $522, for the reasons, as stated, that “the United States inspector of flour at Chicago, Ill., reports that inspection of a sample of the flour delivered at Shoshone Agency by claimant shows it to be inferior in color and strength to the sample upon which the contract was awarded,” and he determined that “the percentage of value less than the sample” was 15 cents per 100 pounds.
It is also averred that a deduction of $300 was made from the amount due him for a certain other lot of flour delivered at Bushvile, Nebr., for like reasons. The claimant avers that he has no knowledge of the inspection of the flour so made at Chicago other than that stated in the communication referred to. The contract provides that the flour “ offered for acceptance under this agreement shall be inspected by the samples thereof submitted with the proposals, by persons properly designated for that purpose by the party of the first part and .at such place as he may designate,” so that by the terms of the contract the defendants had the right not only to designate the person who should inspect the flour, but the place at which the inspection was to be made.
*553 In tbe absence of any averment in tbe petition to tbe contrary, however, we tbink tbe flour “offered for acceptance” was to be inspected at tbe place of delivery, and it being-averred that it was so inspected and accepted, we tbink tbe claimant did all that be was required to do under tbe contract.
Tbe claimant avers tbat be complied witb tbe contract on bis part by delivering tbe flour at tbe several places agreed upon, where it was inspected in accordance witb tbe contract, found to conform to tbe sample, and was delivered to, accepted by, and receipted for by tbe agent of tbe defendants; hence for tbe purposes of tbe demurrer we tbink tbe facts in this respect are sufficiently averred.
It is further contended by tbe defendants tbat tbe claimant’s acceptance of tbe amount due, less tbe deductions stated, has tbe effect to estop him from asserting a claim in this court for tbe amount of such deductions, though no receipt was given therefor beyond tbe amount received, and in support of their contention cite tbe act July 31,1894, section 8 (28 Stat. L., 207), wherein it is provided that “the balances which may from time to time be certified by tbe auditors * * * shall be final and conclusive upon tbe executive branch of tbe Government, except tbat any person whose accounts may have been settled, tbe bead of tbe Executive Department * * * to which tbe account pertains or the Comptroller of tbe Treasury may, within a year, obtain a revision of tbe said account by tbe Comptroller of tbe Treasury, whose decision shall be final and conclusive upon tbe executive branch of tbe Government. * * * Any person accepting payment under a settlement by an auditor shall be thereby precluded from obtaining a revision of such settlement as to any items upon which payment is accepted.” * * *
It is averred in tbe petition tbat tbe claimant, without knowledge tbat bis right of appeal to tbe Comptroller would be affected thereby, received and appropriated tbe Treasury draft mailed to him for tbe amount of bis claim, less tbe deductions as stated, thereby precluding him “from obtaining a revision of such settlement” by tbe Comptroller.
But there is no language in tbe act indicating tbat it was the intention of Congress to thereby deprive a claimant of bis right to sue in this court, and unless tbe acceptance by tbe claimant of a less sum than tbat claimed was by way of accord *554 and satisfaction, as tlie defendants contend, bis right to sue in this court is open under the act March 3, 1887. (24 Stat. L., 503, Supp. to R. S., vol. 1, p. 559.)
This was the view of the court in the case of United States v. Fletcher (147 U. S. 665, 667), where the court, in referring to what was decided in the case of Clyde v. United States (13 Wall., 38), said: “We understand the court to have decided’7 (in Clyde v. United States) “in substance, that the action of the Auditing Department, either in allowing or rejecting such a claim, was not an essential prerequisite to the jurisdiction of the Court of Claims to hear it.”
It is well-settled law that where a certain sum is due, payment of a part will not operate to satisfy the whole debt, even where a release of the entire sum is given, unless such payment be made and accepted upon some new consideration. (United States v. Bostwick, 94 U. S., 53, 67; Fire Ins. Assn. v. Wickham, 141 U. S., 564, 577.)
And to constitute a new consideration it must be so regarded by both parties, and this was the .view of the court in Philpot v. Gruninger (14 Wall., 570, 577), cited with approval in the case of Fire Ins. Assn. v. Wickham (supra).
In this latter case it is further stated that “to constitute a valid agreement there must be a meeting of minds upon every feature and element of such agreement, of which the consideration is one.”
In respect of claims disputed by the Government, there is a class of cases holding in effect that, where a claimant voluntarily submits his claim for adjustment to the proper department or to a board appointed for that purpose, and the amount found due thereby is accepted and a receipt given therefor in full, that bars any further claim. (United States v. Adams, 7 Wall., 463, 479; Mason v. United States, 17 Wall., 67; Murphy v. United States, 104 U. S., 464).
In the latter case, which was a claim for damages growing out of an alleged violation of a contract for excavating a pit for a dry dock, the court held that “acceptance by the claimant, without objection, of the amount allowed by the Secretary of the Navy in his adjustment of the account presented to him was equivalent to a final settlement and compromise of all the items of the present claim included in that account.”
In the case at bar, however, the claim was not an unliquidated one, as the ascertainment of the amount due was a mere matter *555 of computation, nor was it presented as a disputed claim, so' far as it appears from tbe averments in tbe petition.
Tested by tbe rules announced in tbe decisions to wbicb we bave referred and tbe averments in tbe petition applicable thereto, we are of tbe opinion that tbe acceptance by tbe claimant of a less sum, in the absence of a bona fide dispute, than that claimed, and receipting only for tbe amount received, does not estop him from asserting in this court bis right to tbe residue of bis claim.
For tbe reasons given tbe demurrer is overruled, with leave to answer over any time during tbe present term of court.