FRANK X. SCHERER, Respondent, *v.* EAST SIDE NATIONAL BANK OF BUFFALO, Appellant.

(Argued November 24, 1933; decided January 9, 1934,)

*Victor B. Wylegala* for appellant. It is not necessary that the agreement of forbearance be for a fixed and definite time; it is sufficient that the promise is to forbear generally without specifying any time, the law presuming in such case that the forbearance shall be for a reasonable time, what is a reasonable time depending upon the facts and circumstances of each particular case. (*Traders Nat. Bank* v. *Parker*, 130 N. Y. 415; *Muir* v. *Greene*, 191 N. Y. 201; *Strong* v. *Sheffield*, 144 N. Y. 392; *Greene* v. *Odell*, 43 App. Div. 494; *Oppenheim* v. *Waterbury*, 86 Hun, 122; 155 N. Y. 684; *Helios-Upton Co.* v. *Thomas*, 96 App. Div. 401; 184 N. Y. 585; *Union Nat. Bank* v. *Leary*, 77 App. Div. 332; *Johnson & Higgins* v. *Harper*, 228 Fed. Rep. 730; *Smith* v. *Molleson*, 148 N. Y. 241; *Erie County Sav. Bank* v. *Coit*, 104 N. Y. 532.) Duerr's guaranty to plaintiff was a sufficient consideration for plaintiff's guaranty to defendant. (1 Clark on New York Law of Contracts, § 239; *Sun Oil Co.* v. *Heller*, 248 N. Y. 28.)

*Robert J. Lansdowne* and *Paul J. Batt* for respondent. Duerr's guaranty to plaintiff was not a sufficient consideration for the latter's guaranty to the defendant. (*Arend* v. *Smith*, 151 N. Y. 502.) The verdict is not contrary to law. (*Sutter* v. *Vanderveer*, 122 N. Y. 652; *Berson Sydeman Co.* v. *Waumbeck Mfg. Co.*, 212 App. Div.

422; *Vanderbilt* v. *Schreyer*, 91 N. Y. 392; *Barney* v. *Forbes*, 118 N. Y. 580; *Evansville Nat. Bank* v. *Kaufmann*, 93 N. Y. 273; *Atlantic Nat. Bank* v. *Franklin*, 55 N. Y. 235; *Strong* v. *Sheffield*, 144 N. Y. 392.)

CRANE, J.   From about February, 1930, one Edmund C. Johnston, who was the president of the First National Bank of Kenmore, was indebted to the defendant bank on a demand note for $23,000, partly secured by collateral, and partly by the written guaranty of Edward A. Duerr, the president of the defendant bank.   The collateral included four hundred odd shares of the Kenmore Bank stock, of which Johnston was president.   The plaintiff, Frank X. Scherer, had been in the retail and wholesale meat business for twenty-six years.   At one time he was a director and member of the executive committee of the Genesee National Bank, of which Johnston was the executive officer; he was a director of the Genesee National Corporation; later he became a director and member of the executive committee of the Commercial Trust Company; shortly after Johnston left this institution to take up the presidency of the First National Bank of Kenmore, Scherer also left and became a director in the Kenmore bank.   Johnston and Scherer had a joint stock trading account.   Scherer had a safe deposit box at the Kenmore bank and left the key to it with Johnston's secretary so that Johnston could have access to it.

These facts are related to show that Johnston and Scherer were close, intimate friends and business confidants; that their financial interests were somewhat united.   By January, 1931, securities had declined in value and the directors of the East Side National Bank of Buffalo, New York, the defendant, were dissatisfied with the security for the Johnston loan.   They were critical of Duerr's guaranty, not only because he was an officer of their institution, but also for the reason that his financial responsibility had become doubtful.   Johnston was called upon for payment, or for more collateral.   Mr.

Duerr told Johnston that his net worth had decreased somewhat; that the board were critical and wanted him (Johnston) to pay the note. Prior to this conversation and on October 15, 1930, Duerr had written Johnston: " I wondered if it wouldn't be possible some way or other in view of the criticism to obtain another guarantor on this obligation. * * * I am perfectly willing to ride along with this but the Examiner recommended that loans guaranteed by me *be paid.*"

On March 9, 1931, the president, Edward A. Duerr, again addressed a communication to Edmund C. Johnston. It reads as follows:

*" March* 9, 1931.

" Mr. EDMUND C. JOHNSTON, President
First National Bank of Kenmore,
Kenmore, New York.

" My dear ED: I have just had the ' raspberry ' from some of our directors relative to my contingent liability at this Bank. They have asked me not to endorse or guarantee for anyone in the future, and have requested that I make arrangements to take this endorsed and guaranteed paper out of the Bank.

" I think their demands are just, reasonable and sound, and I am going to ask you to make arrangements to place your note elsewhere, so that I can meet with the requirements of our directorate.

" I am sorry that I must make this request. I had hoped you would have been able to obtain the endorsement of Mr. Scherer before this.

" I would appreciate it very much if you could make these arrangements as soon as possible.

" Yours sincerely,
" EDWARD A. DUERR,
*" President."*

That a demand was made upon this borrower, Johnston, prior to March 21, 1931, to pay his indebtedness, take

his note out of the bank, or else give further security, is uncontradicted and beyond question. He arranged to get other security by having his friend and co-worker, Scherer, guarantee his indebtedness with the defendant bank to the extent of $10,000. His indebtedness to the bank was thereafter split up into two notes, one of which Scherer guaranteed. That Scherer knew his guaranty involved financial risk, and that he might be called upon for payment is evidenced from the fact that he refused to make this guaranty until he himself was secured. Scherer's guaranty is a formal, signed and sealed instrument dated March 21, 1931, reading in part as follows:

"For Value Received, and to enable Edmund C. Johnston of Eggertsville, New York, hereinafter designed as 'Debtor,' to obtain credit, from time to time of the East Side National Bank, of Buffalo, N. Y., I hereby request said Bank to extend from time to time to said Debtor such credit as said Bank may deem proper, and I hereby guarantee the full and proper payment to said Bank at maturity and at all times thereafter, and also at the time hereinafter provided, of any and all indebtedness, liabilities and obligations of every nature and kind of said Debtor to said Bank, * * * to the extent of Ten Thousand and 00/100 Dollars, with interest at the rate of 6% per annum from maturity until paid," etc.

The other provisions relate to the waiver of notice and the right to sue. Although we would be justified in taking Mr. Scherer at his word, when he signed and sealed this document, whereby Johnston's loan was extended by the bank, we have additional facts which show conclusively that this was more than a mere formality and an unenforceable accommodation. Realizing his liability to the bank, Scherer obtained from Duerr a written agreement, dated March 24, 1931, to protect and save him harmless from all loss by reason of the said guaranty of Johnston's note. As a witness in this case, Scherer testified:

" Q. He (Johnston) told you in order to continue his credit at the East Side National Bank you would have to substitute for Mr. Duerr?   A. Yes, I substituted for Mr. Duerr, because Mr. Duerr was on the guarantee.

" Q. In order to keep up his credit, to continue his credit it would be necessary to have you or someone else responsible to substitute for Mr. Duerr?   A. He asked me if I would.

" Q. And you finally did?   A. After I had a conversation with Mr. Duerr."

Whatever the arrangement or understanding may have been between the plaintiff and Johnston or Duerr in any way conflicting with these written statements, it was absolutely immaterial to the bank.  The bank was the creditor to whom the money was due.  As early as January, 1931, the bank had demanded payment from Johnston.  He was requested in writing to take his note out of the bank and he knew that Duerr's guaranty, and the stock held as security, were considered insufficient.  Under these circumstances, Scherer guaranteed his indebtedness to the extent of $10,000, stating as clearly as the English language can state it, that he was furnishing the guaranty to the bank to enable Johnston to obtain credit from time to time.  The bank accepted the guaranty of Scherer and acted upon it; extending the demand for payment until the following August.  On December 19, 1931, Johnston, not having paid his notes as demanded, the collateral was sold, leaving a balance more than the guaranty still due.  Scherer at that time having on deposit in the bank more than sufficient to meet his guaranty, the amount due from him was charged against his account.  Thus, the form of this action.

The plaintiff has sued for the ten thousand odd dollars due him as a depositor; the defendant has counterclaimed that the amount was applied to the sum owing the bank on his written guaranty of Johnston's $10,000 note, and that this was done in accordance with the terms and

conditions of the instrument. There is no fault found with the methods adopted by the bank or over the lack of notice. The only point raised on the trial of this case has been the claim of Scherer that his guaranty was a mere accommodation without consideration. A recital of the above facts is a sufficient answer to such a claim. To furnish a valuable consideration, one in the nature of forbearance, it was not necessary that a definite time should be fixed as the limit or extent of the forbearance. (*Traders' Nat. Bank* v. *Parker*, 130 N. Y. 415; *Muir* v. *Greene*, 191 N. Y. 201; *Strong* v. *Sheffield*, 144 N. Y. 392.) The fact that Scherer by his guaranty requested an extension of credit for Johnston, and that the bank thereafter, acting upon his written promise, extended the time and carried the loan for from five to eight months, was sufficient to make Scherer's promise binding at law. Formal legal papers dealing with bank credit must mean something. The directors of this bank took Scherer at his word and carried Johnston's paper and his loan for months on the strength of the former's written promise. To permit him now to repudiate the transaction under the plea of an empty formality to deceive the unsuspecting and to trick bank examiners, would cast further discredit upon banking, and weaken confidence in reputed assets.

There is no legal excuse that we can find in this record for Scherer's defaulting on his obligation, and the judgments in the courts below should be reversed and judgment granted dismissing plaintiff's complaint, with costs in all courts.

POUND, Ch. J., LEHMAN, KELLOGG, O'BRIEN, HUBBS and CROUCH, JJ., concur.

Judgment accordingly.