## Citizens Union National Bank v. Klein.

(Decided Oct. 15, 1935.)

BRUCE & BULLITT, WM. MARSHALL BULLITT, LEO T. WOLFORD, and MIDDLETON MILLER for Citizens Union Nat. Bank.

TRABUE, DOOLAN, HELM & HELM, J. BLAKEY HELM and WATSON CLAY for Klein.

Opinion of the Court by Judge Ratliff—Affirming.

This appeal involves the determination of two questions arising out of the following state of facts:

(1) In October, 1930, Harry Inman, a son-in-law of Junius Klein, owed the Citizens Union National Bank (hereinafter called the bank) approximately $28,000 on a demand note, secured by capital stock of the Inman Company. This stock having no ready market and being of uncertain value, on October 8, 1930, Mr. Cobb, a vice president of the bank, asked Klein to guarantee to the bank the payment of Inman's note, to which Klein consented, and signed the following writing, the pertinent part of which reads:

"Whereas, Harry Inman (hereinafter called the borrower), desires to transact business with a procure credit from the Citizens Union National Bank (hereinafter called the Bank), and may from time to time, by reason thereof, be indebted to said Bank:

"Now, therefore, for and in consideration of One Dollar paid to the undersigned by the Bank and other valuable consideration, the receipt of all of which is hereby acknowledged and of the extending of credit by its Bank to the Borrower, the undersigned, their heirs, personal representatives and assigns, jointly and severally guarantee to the Bank, its successors and assigns, the due and punctual payment at maturity of all loans, advances, credits, overdrafts, bills, notes, checks, drafts, acceptances, negotiable instruments and evidences of debt made endorsed or discounted to or through the Bank by the Borrower, or any renewals or extensions thereof, and of any and all indebtedness, whether matured or unmatured, now existing or

that may hereafter be created from time to time from the Borrower to the Bank.

"[Signed] Junius C. Klein."

(2) In October, 1930, Klein, the appellee, was indebted to the same bank in the sum of about $65,000, and to secure this indebtedness he pledged as collateral security certain shares of listed stock. In 1931 or 1932, the bank became afraid this collateral was not sufficient to protect Klein's debt to the bank, and asked him for additional security. Klein not having any more listed or marketable securities on hands, he turned over to the bank certain other shares of unlisted stock. It is the contention of Klein that this last stock was accepted by the bank temporarily for the single purpose of insuring, not Klein's debt, but to insure the adequacy of the collateral originally pledged, and that it has been shown that the collateral originally pledged is amply sufficient to secure his indebtedness, and he is now entitled to have the last collateral returned to him, notwithstanding the debt has not been paid. But it is the contention of the bank that the last collateral pledged was in addition to the original collateral, for the purpose of securing the debt.

Later a controversy arose between Klein and the bank as to whether Klein was bound by the writing to pay Inman's debt and Klein refused to recognize any liability thereon, and also demanded that the bank return to him of his unlisted securities which he had posted as additional security for his own indebtedness as above stated, which the bank refused to do. Klein then instituted this action for a declaration of rights upon the two questions involved, to wit: (a) Whether or not he was bound by the writing he signed to pay Inman's debt; and (b) whether or not he is entitled to a return of the last pledged securities to secure his own debt.

By subsequent pleadings the issues were made and evidence taken by the respective parties. Upon a hearing of the case, the chancellor determined and adjudged that Klein was not bound by the guaranty agreement on the ground that it was not supported by any consideration; and also adjudged that Klein was not entitled to a return to him of the last unlisted securities pledged by him to secure his debt.

The bank has appealed from that part of the judgment adverse to it, and Klein has prosecuted a cross-appeal from that part of the judgment adverse to him.

We will discuss these questions in order named.

Appellant does not contend that there was any credit extended to Inman after the execution of the writing. Its contention is that the writing was to secure the then present indebtedness of Inman, and executed by Klein in consideration of forbearance of the bank to sue Inman on his indebtedness, and that the bank did forbear.

The writing is plain and unambiguous in its terms. It merely purports to secure Inman's then existing indebtedness. Under the terms of the writing, it could not be said that the bank was bound to extend to Inman further credit, or to forbear suit on the existing indebtedness. If the bank had sued Inman on his note immediately after Klein signed the writing, Inman could not have defended such suit on the ground that the bank was bound by the writing to forbear suit, consequently the bank agreed to do nothing in return for Klein's purported agreement to secure Inman's debt.

The writing being free from ambiguity, it is doubtful that parol evidence should have been considered; but conceding that evidence was permissible for the purpose of ascertaining the intention of the parties with respect to the alleged consideration of forbearance, we do not find any evidence in the record tending to show that there was any agreement, either express or implied, that the bank agreed to forbear.

Klein testified, in substance, that on the day he signed the writing, Mr. Cobb, vice president of the bank approached him and asked him to do him a personal favor and Klein asked him what it was, and Cobb told him that he would like for him to secure Inman's indebedness. After some hesitancy, Klein consented to do so, but asked Mr. Cobb not to let Inman know anything about it. Inman was not present and knew nothing about the transaction. Inman testified that no officer of the bank had told him prior to October 8, 1930, that, unless he furnished additional collateral or other additional security, they would call the loan or sue on the note. It appears that in the interval of time between May, 1929, and October, 1930, Inman had reduced his indebtedness to the bank from $36,000 to $28,000. It does not appear that the bank was pressing Inman on the note, nor did not do so until after certain bank failures in 1930, and after Klein had signed the writing in question. It is also shown that some time after Klein had signed the writing the bank called on Inman for addi-

tional collateral and procured from him an insurance policy. This repels the idea that the bank was forbearing suit on account of the guaranty. Mr. Cobb testified that he knew that Klein was a very rich man and was able to secure Inman's indebtedness in addition to his own. Mr. Cobb testified that Harry Inman's loan was becoming questionable so far as collateral values were concerned, and that he knew Mr. Klein was a rich man and the father-in-law of Harry Inman, so it occurred to him that it would be a good idea if he could secure Mr. Klein's guaranty of Inman's debt, and that on October 8, 1930, "I did get ahold of Mr. Klein and talked to him about the situation and told him we had no desire to press Harry Inman and suggested he could probably relieve Harry of pressure by giving us this guaranty on his then existing debt of $28,000, which guaranty was filled out in our office and signed by Mr. Klein on that day." It will be noticed that in the above-quoted statement of Mr. Cobb, he says, "We had no desire to press Harry Inman and suggested he could probably relieve Harry of pressure by giving us this guaranty * * *." This is the only evidence that suggests any intention of the bank to press Inman on his indebtedness. But other evidence of Mr. Cobb on this point repels any inference that there was an agreement between Cobb and Klein, that Klein executed the writing in consideration of the bank's forbearance to sue Inman on his note. Mr. Cobb was asked:

"Did you tell Mr. Klein prior to the execution of this paper that unless he executed this paper or some additional collateral was put up you would institute suit against Mr. Inman to collect the debt? A. No, sir, I did not."

Mr. Klein also testified that no representative of the bank had told him the bank was threatening to call Inman's loan, and that no mention whatever was made to him of the bank forbearing a suit against Inman.

It may be conceded that the bank did not press Inman on his indebtedness because of the writing signed by Klein. But mere forbearance is not a consideration in the absence of an agreement to forbear. Williston on Contracts, sec. 136; Sellars v. Jones, 164 Ky. 458, 175 S. W. 1002, 1003. It is not necessary, however, that an agreement to forbear must be in exact and concise words; it may be inferred from the circumstances. But no such inference will be indulged from

mere circumstances where the writing itself and the evidence relating to forbearance is plain and positive as in the instant case. In the case of Fire Ins. Association v. Wickham, 141 U. S. 564, 12 S. Ct. 84, 88, 35 L. Ed. 860, it is said:

"To constitute a valid agreement there must be a meeting of minds upon every feature and element of such agreement, of which the consideration is one. The mere presence of some incident to a contract which might under certain circumstances, be upheld as a consideration for a promise, does not make it the consideration for the promise in that contract. To give it that effect, it must have been offered by one party, and accepted by the other, as one element of the contract."

In support of appellant's contention is cited Scherer v. East Side National Bank of Buffalo, 263 N. Y. 190, 188 N. E. 645, in which case there was a demand on the debtor to pay off his note prior to the signing of the guaranty. There are also other facts in that case which distinguish it from the present case. Appellant also relies on the case of Merrimac Chemical Co. v. Moore, 279 Mass. 147, 181 N. E. 219, in which case the guarantor was the man to whom the credit came relative to his company's loan. Moore was told that the credit to his debtor company could not go on without some payment, and in lieu thereof he offered his own guaranty during the time he was interested in the company. In these circumstances, the court held that the guaranty was enforceable. Appellant cites and relies on certain other cases where the guaranty involved was executed simultaneously to the creation of the debt, or that there was a request for forbearance or other circumstances sufficient to constitute a consideration for the guaranty. Upon examination of these cases, we find the facts different to the ones in the present case.

In Mason & Co. v. Collins, 9· Ky. Law Rep. 578, it is said:

"A collateral undertaking to pay the pre-existing debt of a third party is not binding unless based upon a sufficient consideration, and the legal presumption does not arise that it is based upon a sufficient consideration, as it does in the case of an original undertaking in writing."

Also, in the case of Walter A. Wood Mowing &

Reaping Machine Co. v. Land, 98 Ky. 516, 32 S. W. 607, 608, 17 Ky. Law Rep. 791, speaking of a guaranty of indebtedness already created, the court said:

"The rule of law is this: If the original debt or obligation is already incurred or undertaken previous to the collateral undertaking, then there must be a new and distinct consideration to sustain the guaranty."

Thus it will be seen that where the guarantor undertakes to secure the already existing debt of a third party, a higher degree of proof of consideration is required:

In Sellars v. Jones, supra, it is said:

"It is well settled that forbearance to sue is a sufficient consideration to support a promise. However, a mere forbearance to sue is not enough in the absence of circumstances from which an agreement to forbear may be inferred."

But as has been said, the circumstances in the present case do not warrant the inference that there was an agreement to forbear.

Mr. Klein does not deny signing the paper, and though it be conceded that it is a moral obligation which he should carry out, yet he has the right to avail himself of any legal defense he may have, and the courts will determine the legal rights of the parties according to legal principles in such cases. Wherefore, we are constrained to the conclusion that Mr. Klein is not bound by the writing, and the chancellor did not err in so holding.

The question relating to the return of Klein's unlisted stock, which he posted as additional security, was not evidenced by any writing. It was only a verbal transaction. Upon this point, we note the following question and answer thereto taken from Klein's testimony:

"Q. How does the bank happen to have this unlisted collateral? A. Back yonder in possibly 1931 and 1932, Mr. Cobb was afraid my collateral was going down to the danger point and asked me for more collateral. I told him I could not give him any more listed stock, but I had some unlisted stock, which was as good as and better than the listed stock except it did not have a market, and I

first put up three hundred shares of the Inman Company, and later on I put up two hundred shares, and then two hundred and forty shares of the Gibbs-Inman Company, and he wrote me about that, said he could not accept the unlisted stock as collateral only as a protection against the bank's equity in my claim. At that time nothing was said about Harry Inman's debt."

Mr. Cobb testified that the unlisted stock was posted as additional security to Klein's own indebtedness, and that there was no understanding that it was to be of a temporary nature. We think that Mr. Klein's own evidence is conclusive of this question. There is no evidence tending to show that the unlisted security was to be held by the bank temporarily or for any purpose other than to secure Klein's debt. Mr. Klein now claims that it has been shown that the listed securities originally posted to secure his debt are more than sufficient to pay the debt, and for this reason he is entitled to a return of the last posted security. However, it has not been determined judicially or otherwise that the listed securities originally posted will not depreciate in market value before the debt is paid. It is admitted that the bank requested the additional security because of the uncertain condition of the stock market. In these circumstances we do not think that Klein is entitled to a return of his collateral until his debt is paid. It may be true, however, that the securities pledged are more than sufficient to secure the debt, but inasmuch as Mr. Klein complied with the request of the bank to post these securities the court cannot interfere with the contract which the parties made for themselves. It follows that the chancellor did not err in refusing to adjudge a return of the securities as requested by Klein.

The chancellor's finding on the whole case being in harmony with our views, the judgment is affirmed on both the original and cross-appeal.