Fremont-Smith, J.
The plaintiff, BNY Financial Corporation (“BNY"), brought this action by verified complaint against the defendants, Fitwel Dress Co., Inc. (“Fitwel”) and Alan H. Gluck (“Gluck”), seeking to enforce the terms and conditions of: (1) a Factoring Agreement entered into by BNY and Fitwel; (2) a Guaranty Agreement entered into by Gluck to secure Fitwel’s obligations under the Factoring Agreement; and (3) certain security instruments entered into by Fitwel on accounts receivable, inventory and trademark collateral for the purposes of the Factoring Agreement. In addition, BNY requested that the court enjoin Fitwel and Gluck from further dissipation or destruction of collateral. The defendants, Fitwel and Gluck, filed a Counterclaim against BNY alleging: (1) breach of the duty of good faith and fair dealing; (2) breach of fiduciary duty; (3) breach of contract; and (4) violations of M.G.L.c. 93A, §§2 and 11. On or about October 24, 1995, the Court (Fremont-Smith, J.) entered an order enjoining Fitwel and Gluck from: (1) in any manner disposing of or reducing the value of the collateral of BNY; (2) interfering with the right of BNY and its agents to enter onto the premises of Fitwel in order to take possession of or sell such collateral; and (3) in any manner disposing, diminishing or reducing the value of any of the defendants’ assets. BNY now moves, pursuant to Mass.R.Civ.P., Rule 56, for summary judgment on the issue of defendants’ liability under the Factoring and Guaranty Agreements and on the Counterclaim. After hearing and the Court’s consideration of the submissions of the parties, the Court ALLOWS BNY’s motion for summary judgment.
BACKGROUND
For over sixty years, Fitwel, a manufacturer and wholesaler of ladies apparel, was operated by members of the Gluck family. During its years of operation, Fitwel manufactured and sold women’s clothing under three primary trade names or labels: (1) Barclay Square; (2) Boston Traveler; and (3) Lady in Waiting (a maternity line). Alan Gluck joined Fitwel in 1983 and was promoted to the position of president in 1993, when his father, the former president, became ill.
It is undisputed that in 1993, when Gluck assumed the presidency of Fitwel, USTrustwas Fltwel’s lender. At some point in 1994, however, USTrust requested that Fitwel find another lender as it would be terminating its loan relationship with Fitwel. With the help of a paid consultant, Fitwel began to explore other financing arrangements, including factoring agreements, [1] to meet its financing needs.
On or about November 30, 1994,[2] BNY and Fitwel entered into a Factoring Agreement (the “Factoring Agreement”) pursuant to which BNY loaned Fitwel money against Fitwel’s inventory and accounts receivable and Fitwel promised to repay to BNY all amounts drawn down under the Factoring Agreement plus interests, costs and attorneys fees. Pursuant to the terms of the Factoring Agreement, BNY maintained a continuing security interest in all present and future receivables of Fitwel. See Factoring Agreement Section 1(b). In addition, on November 30, 1994, it is undisputed that Gluck executed and delivered to BNY the following documents in connection with the Factoring Agreement: (1) an inventory security agreement and accompanying UCC-1 financing statements; and (2) a *374 trademark collateral security agreement. BNY contends that a faxed copy of a Guaranty Agreement was also made available to Gluck on November 30, 1994, but Gluck maintains that the document was illegible and does not recall whether he signed it. It is undisputed that Gluck and Fitwel were represented by attorney Wieckowski of the Boston law firm of Nutter, McClennen & Fish at the November 30, 1994, Factoring Agreement closing, at which time both Wieckowski and Gluck were given an opportunity to review the Factoring Agreement and accompanying documents, and that, following the execution of the Factoring Agreement, BNY advanced funds to Fitwel in the amount of 1,737,686.49[3] for the purposes of repaying the outstanding indebtedness of Fitwel to USTrust.
On or about January 12,1995, Gluck executed and delivered to BNY a Guaranty Agreement (the “Guaranty Agreement”) pursuant to which Gluck guaranteed all of Fitwel’s obligations to BNY under the Factoring Agreement.
The terms of the Factoring and Guaranty Agreements and related security agreements state that they shall be governed by and construed according to the laws of the State of New York. See Factoring Agreement Section 11(b); Guaranty Agreement at 2; Inventory Security Agreement Section 5F; and Trademark Collateral Security Agreement Section 18. It is undisputed that BNY has the power, under the terms of the Factoring Agreement, to: (1) institute reserves; (2) place limits on borrowing; and (3) terminate the Factoring Agreement on 90 days written notice. In addition, BNY asserts that they required, as a condition of the Factoring Agreement, that: (1) Fitwel’s landlord sign a waiver; and (2) that Fitwel supply quarterly audited financial statements. Robert Chakarian, Assistant Vice President of BNY, states under oath that Fitwel defaulted on its obligations under the Factoring Agreement when it failed to produce the landlord waiver or quarterly financial reports. In his deposition, Gluck admitted that he knew that BNY wanted the landlord’s waiver, but asserted that he could not provide it if the landlord wouldn’t sign it. Gluck further stated that he didn’t know whether the quarterly financial reports were supplied as the Factoring Agreement required.
BNY further alleges, under oath, that a revised sales projection was issued in December 1994, which indicated a decrease in Fitwel’s projected gross annual sales from approximately $7.5 million (Fitwel’s projection prior to entering into the Factoring Agreement) to $6.3 million dollars. As a result, and in view of Fitwel’s large inventory, BNY exercised its right to institute a $1,000,000 inventory cap on Fitwel’s borrowing. See Factoring Agreement at paragraph 4. In addition, BNY withdrew financing in the amount of $39,000, following Fitwel’s failure to obtain the landlord waiver. Gluck alleges, under oath, that these decisions, together with BNY’s decisions to use Dun & Bradstreet non-apparel rating books to finance eligible receivables and to reserve amounts equal to twice disputed receivables, substantially impaired his ability to continue to operate Fitwel and effectively terminated financing, causing the business to be shut down.
On or about March 20, 1995, as was its right under the Factoring Agreement, BNY gave Fitwel 90 days written notice that it would be terminating the Factoring Agreement, pursuant to Section 9(a)(i), effective June 19,1995.[4] On or about August 8, 1995, following Fitwel’s default as a result of its inability or refusal to pay the amounts due upon the June 19, 1995 termination of the Factoring Agreement, BNY made written demand on: (1) Fitwel for payments due and owing under the Factoring Agreement; and (2) Gluck for amounts due and owing pursuant to the Guaranty Agreement. Also in June 1995, Fitwel’s landlord instituted an eviction action against Fitwel, as the company was in arrears on its rent.
On or about August 30, 1995, following Fitwel and Gluck’s failure to respond to BNY’s written demands for payment under the Factoring and Guaranty Agreements, BNY instituted this action by verified complaint. On or about October 25, 1995, the Court (Fremont-Smith, J.) issued an order preliminarily enjoining the defendants from in any way dissipating BNY’s assets and allowing BNY to take possession of and to sell the assets. It is undisputed that three sales of the assets of Fitwel by BNY, as well as further collections of Fitwel accounts receivable, resulted in net proceeds of $261,632.33 which amount was applied to the obligations of Fitwel under the Factoring Agreement, leaving $295,632.33 plus interest, costs and attorneys fees due and owing to BNY. BNY now moves, pursuant to Mass.R.Civ.P., Rule 56, for summary judgment as to the liability of Gluck and Fitwel under the Guaranty and Factoring Agreements, respectively, and as to the defendants’ Counterclaim. The defendants oppose BNY’s motion, alleging that there are genuine issues of material fact which render the case inappropriate for summary judgment.
DISCUSSION
This Court should grant summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Nashua Corp. v. First State Ins. Co., 420 Mass. 196, 202 (1995); Community Nat’l Bank v. Dawes, 369 Mass. 550 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing *375 that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “The nonmoving party cannot defeat the motion for summary judgment by resting on its pleadings and move assertions of disputed facts ...” LaLonde v. Eissner, 405 Mass. 207, 209 (1989). The nonmoving party’s failure to prove an essential element of its case “renders all other facts immaterial” and mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). Vague and general allegations of expected proof are not enough to defeat a summary judgment motion. Cherella v. Phoenix Technologies, Ltd.., 32 Mass.App.Ct. 919, 920 (1992).
The Factoring Agreement
The plaintiff, BNY, first asserts that the defendant, Fitwel, has admitted its liability under the Factoring Agreement in that Fitwel admits: (1) the Factoring Agreement was duly executed; (2) funds were advanced pursuant to the terms of the Factoring Agreement; (3) the Factoring Agreement was terminated in accordance with its terms; and (4) Fitwel has failed to repay to BNY the amounts due and owing to BNY under the Factoring Agreement. While the defendants admit under oath that BNY acted in accordance with the terms of the Factoring Agreement, Fitwel nevertheless contends that BNY: (1) was late in closing the loan despite alleged oral assertions that it would be in place earlier; (2) rejected certain accounts as ineligible for financing under the Factoring Agreement despite making oral assertions to the contrary prior to the execution of the Factoring Agreement; (3) breached the implied covenant of good faith and fair dealing where it instituted a $1,000,000 cap on Fitwel’s inventory borrowing; (4) improperly reserved credit in the amount of $39,000 following Fitwel’s failure to obtain the landlord’s waiver; (5) improperly reserved credit in the amount of twice the disputed receivables; and (6) terminated the Factoring Agreement in bad faith.
Choice of Law
The plaintiff, BNY, first points out that, pursuant to their terms, the Factoring, Guaranty and related Security Agreements are governed by and shall be construed in accordance with the laws of the state of New York. The defendants assert, however, that choice of law provisions in contracts are valid and enforceable only where they are (1) not contrary to public policy; (2) made in good faith; and (3) made without intent to evade the law of the place where the contract was made. See Massengale v. Transitron Elec. Corp., 385 F.2d 83 (1st Cir. 1987). It is settled law, however, that "... [Massachusetts] courts routinely enforce choice of law provisions unless the law chosen violates established public policy or bears no reasonable relationship to the contractual transaction between the parties.” Lambert v. Kysar, 983 F.2d 1110, 1118 (1st Cir. 1983). The Supreme Judicial Court has “acknowledged and given effect to the law reasonably chosen by the parties to govern their rights under contracts.” Morris v. Watsco, Inc., 385 Mass. 672, 674 (1982); see also Nissenberg v. Felleman, 339 Mass. 717, 719 (1959) (by agreement, rights governed by New York law). Here, where BNY is a New York based bank which enters into financing arrangements with clients throughout New England and in New York, it cannot reasonably be disputed that BNY has a rational and legitimate interest in designating the law of New York as controlling. Where Fitwel was represented by counsel at the Factoring Agreement closing and made no objection to the choice ofNew York law, the Court finds that the parties’ agreement to designate the New York law is not contraiy to public policy, was reasonable, and should be enforced.
M.G.L.c. 93A
The plaintiff next asserts that because N ew York law applies, the defendants counterclaim asserting violations of M.G.L.c. 93A fails. The defendants, however, citing Jacobson v. Mailboxes, Etc., U.S.A., Inc., 419, Mass. 572 (1995), contend that where the language of the choice of law provision does not purport to bar application of M.G.L.c. 93A, the choice of law provision should not be expanded in scope to bar Fitwel’s counterclaim. As in Jacobson, supra,
The agreement does not state that the rights of the parties are to be governed by California law but only that the agreement is to be governed and construed by California law. The choice of law clause does not purport to bar application of G.L.c. 93A to the parties’ dealings in Massachusetts.
Id. at 580 n.8. Nevertheless, it is well settled that a contractual provision making the law of another jurisdiction applicable to the agreement between the parties bars assertion of unfair trade practices claims under M.G.L.c. 93A if they amount, in substance, to “embroidered ‘breach of contract’ claims.” Northeast Data Sys. v. McDonnell Douglas Computer Sys. Co., 986 F.2d 607, 609 (1st Cir. 1993) (holding that even bad motive allegations do not take M.G.L.c. 93A claims outside the scope of the contract’s choice of law provision). Jacobson, supra, is not to the contrary. There, the Supreme Judicial Court merely stated that alleged precontract violations of M.G.L.c. 93A were not covered by the parties subsequent contractual choice of law provision. The Court went on to recognize, citing Northeast Data Sys., supra, that “G.L.c. 93A claims based on contract violations are covered by contractual choice of law provision.” Jacobson, supra, at 580 n.8. Here, the defendants’ M.G.L.c. 93A claims go to the core of the contract dispute and the Court finds that the choice of law provision in the Factoring Agreement bars application of the Massachusetts statute.
*376 Implied Covenant of Good Faith and Fair Dealing
The parties’ choice of New York law in this case also governs disposition of the defendants’ counterclaim that BNY has breached the implied covenant of good faith and fair dealing. Although New York law recognizes the implied covenant of good faith and fair dealing, Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro, 961 F.2d 1052, 1056 (2d Cir. 1992), “(t]he implied covenant does not, however, operate to create new rights; it simply ‘ensures that parties to a contract perform the substantive bargained-for terms of their agreement’ and that parties are not denied ‘express explicitly bargained-for benefits.’ ” Don King Prod., Inc. v. Douglas, 742 F.Supp. 741, 767 (S.D.N.Y. 1990) (citations omitted); see also Resnick v. Resnick, 722 F.Supp. 27, 37 (S.D.N.Y. 1989) (allegations that bank terminated plaintiffs line of credit while at the same time conspiring to launch a competitive business, does state a cause of action for breach of the implied covenant). Here, where it is undisputed that BNY, in exercising its discretion under the terms of the contract to create reserves, to set credit caps or to terminate the Factoring Agreement, acted in accordance with the terms of the Factoring Agreement and without any allegation of ulterior motive or malice, but for the purpose of collecting a loan which was in default, the Court finds that BNY did not breach the implied covenant of good faith and fair dealing as defined under New York law.
Breach of Fiduciary Duty
Fitwel and Gluck further contend that BNY breached a fiduciary duly to Fitwel. It is settled law, however, that the debtor/creditor relationship arising out of a factoring agreement does not give rise to a breach of fiduciary duty. See Resnick v. Resnick, 722 F.Supp. 27, 39 (S.D.N.Y. 1989). The defendants point out that, under New York law, a fiduciary relationship .may arise between a bank and its customer where the bank and customer have sufficiently close association, so as to exercise control over the debtor’s business operations, id., and Gluck asserts in paragraph 13 of his affidavit that BNY exercised excessive control over Fitwel sufficient to constitute a breach of fiduciary duly. Despite these somewhat conclusionary factual assertions, however, the Court finds that there is no evidence that BNY acted in any manner other than in accordance with the terms of the Factoring Agreement, so that even if a dispute of material fact as to whether there was a fiduciary relationship could be found to exist, there is no evidence that there was a breach thereof. See Weinberger v. Kendrick, 698 F.2d 61, 79 (2d Cir. 1982).
Breach of Contract
Finally, while it is undisputed by the parties that BNY acted in accordance with the terms of the contract, Fitwel relies on oral statements allegedly made by BNY personnel prior to the execution of the Factoring Agreement to support its claim that BNY’s actions wrongfully put it out of business. Pursuant to paragraph 12(g) of the Factoring Agreement, however,
This Agreement cannot be changed or terminated orally . . . This Agreement, and any concurrent or subsequent written supplements thereto or amendments thereof signed by both of us, represent our entire understanding and supersede all inconsistent agreements and communications, written or oral, between your and our officers, employees, agents and other representatives.
Where, as here, no evidence of fraud or mutual mistake is presented and the parties have entered into an integrated, written agreement, the parol evidence rule bars evidence of prior or contemporaneous negotiations offered to modify or contradict the terms of the writing. See, e.g., Chemical Bank v. Kaufman, 530 N.Y.S.2d 582, 583 (N.Y.App.Div. 1988).
The Guaranty Agreement
Plaintiff BNY next asserts that Gluck is liable to BNY for the debts of Fitwel under the Factoring Agreement pursuant to a Guaranty Agreement he signed on or about January 12, 1995. Gluck contends, however, that the Guaranty Agreement he admittedly signed on January 12, 1995, was invalid for lack of consideration.[5] The Guaranty recites the following consideration:
In consideration of your entering into or your refraining from terminating at this time a Factoring Agreement with the effective date of November 30, 1994, . . . the undersigned . . . hereby guarantees to BNY. .. the prompt payment of all. .. liabilities, indebtedness and obligations of [Fitwel] to [BNY].
(Emphasis added.)
Gluck argues that Fitwel never received the benefit of BNY’s alleged promise to forbear from terminating the Factoring Agreement in exchange for his provision of the Guaranty. The terms of the Guaranty, however, do not require that BNY forbear from terminating the Factoring Agreement in the fixture. Moreover, even where no future credit is extended, “[a] written guaranty given upon the expressed past consideration of credit actually extended is enforceable,” under New York law. Hudson Valley Paper Co. v. LaBelle, 571 N.Y.S.2d 107, 108 (N.Y. App. Div. 1991). Here, it is undisputed that credit was extended by BNY to Fitwel both prior to and following Gluck’s January 12, 1995, execution of the Guaranty Agreement. Moreover, an agreement to forbear the exercise of a legal right, even where not for a definite time, constitutes sufficient consideration for a guaranty under New York law. Scherer v. East Side Nat’l Bank, 263 N.Y. 190, 196 (1934). Accordingly, the Court finds that Gluck is liable to BNY under the Guaranty Agreement.
ORDER
For the foregoing reasons, the Court ALLOWS BNY’s motion for summary judgment as to its Verified Com *377 plaint and as to the Defendant’s Counterclaim. Judgment shall enter for the plaintiff on the sum of $295,632.33 plus interest, costs and reasonable attorney fees.[6]

 Typically, in a modem factoring agreement, funds and credit are advanced against a client’s accounts receivables and against liens on the client’s merchandise and other property.

 Gluck contends, under oath, thatBNY promised him that financing would he in place by September 15, 1994, and further contends that BNWs delay was a proximate cause of Fitwel’s financial troubles and ultimate liquidation.

 Fitwel's debt to USTrust constituted a revolving line of credit in the amount of approximately $ 1,669,878 and a term loan in the amount of $50,625.

 Gluck does not dispute that the loan documents entitled BNY to terminate the agreement in this fashion but alleges that the timing of BNTs actions was in bad faith.

 BNY asserts that a faxed copy of the Guaranty Agreement was earlier given to Gluck at the November 30, 1994 closing of the Factoring Agreement, but Gluck remembers only that the document was illegible and cannot remember whether he signed it. The Court will thus address only the undisputed January 12, 1995 Guaranty Agreement.

 Any papers in support of a motion for an award of attorney fees shall be served pursuant to Rule 9A within 10 days after receipt of this Order.